WEIMER, Justice.
_JjWe granted certiorari in these consolidated cases to resolve an issue of first *1059 impression in this court — whether a member of a putative class is entitled to the suspension of prescription provided for in La. C.C.P. art. 596 when an independent, individual lawsuit is filed prior to a ruling on the class certification issue. The respective district courts in each of these cases sustained exceptions of prescription, dismissing plaintiffs’ individual lawsuits filed prior to a resolution of the class certification issue in class action proceedings in which the plaintiffs were putative members. The court of appeal affirmed the dismissals, finding that the filing of an individual lawsuit by a member of a putative class prior to a ruling on the class certification issue operates as an “opt out” of the class action and a forfeiture of the | suspension provisions of La. C.C.P. art. 596. We granted certiorari to consider the correctness of this conclusion.
After reviewing the relevant statutory provisions, we find, contrary to the conclusions of the lower courts, that because plaintiffs are members of a class asserted in a class action petition, they are entitled to the benefits of the suspension of prescription provided under La. C.C.P. art. 596, notwithstanding that they also filed individual actions prior to a resolution of the class certification issue. As a result, we reverse the judgments of the lower courts sustaining exceptions of prescription to the petitions of the plaintiffs and remand these matters to the respective district courts for further proceedings.
FACTS AND PROCEDURAL HISTORY
The instant application arises out of two cases, filed in different district courts, which were consolidated in the court of appeal.

Duckworth v. Louisiana Farm Bureau Mutual Ins. Co.

The first case, Helen Duckworth v. Louisiana Farm Bureau Mutual Insurance Company, was filed in the 34th Judicial District Court for the Parish of St. Bernard. In that case, Ms. Duckworth alleges she is the owner of immovable property located in Arabi, Louisiana, which, on August 29, 2005, the date Hurricane Katrina struck the state of Louisiana, was covered by a policy of homeowner’s insurance underwritten by Louisiana Farm Bureau Mutual Insurance Company (“Farm Bureau”). The petition alleges the property suffered damages as a result of the hurricane for which Farm Bureau failed to provide adequate compensation. Ms. Duckworth seeks damages and the assessment of bad faith penalties. The petition, filed on December 30, 2008, additionally alleges that prescription on the asserted claims was interrupted pursuant to La. C.C. art. 3463 with the August 29, 2007 filing of a mass joinder complaint in federal district court, Acevedo, et al. v. AAA Insurance, et al., no. 07-5199, on the docket of the United States District Court for the Eastern District of Louisiana. Ms. Duckworth was a named plaintiff in that litigation.
On February 8, 2011, Farm Bureau filed a pleading entitled “Peremptory Exceptions of Prescription and/or Peremption and No Right of Action and Answer and Affirmative ■ Defenses.” In that pleading, Farm Bureau argued that because Ms. Duckworth’s initial claim was filed in a court of incompetent jurisdiction — the federal court, which lacked diversity jurisdiction because Farm Bureau is a Louisiana corporation — prescription was not interrupted and the December 30, 2008 petition was, therefore, untimely.
Ms. Duckworth responded by acknowledging the federal filing was in a court of incompetent jurisdiction and, therefore, could not serve to interrupt prescription on her claims. However, she argued her claims were nonetheless timely because the applicable prescriptive period was sus *1060 pended, pursuant to La. C.C.P. art. 596, by the August 29, 2007, filing of a class action proceeding, Vinturella v. Louisiana Farm Bureau Mutual Insurance Company/Louisiana Farm Bureau Casualty Insurance Company, no. 06-8340, on the docket of the Civil District Court for the Parish of Orleans. She asserted she is a putative class member in this proceeding in which the certification question remains unresolved. At the hearing on the peremptory exception, the district court took judicial notice of the Vinturella class action in lieu of receiving evidence.
Following that hearing, on April 8, 2011, the district court sustained Farm Bureau’s exception of prescription and dismissed Ms. Duckworth’s suit with prejudice. The district court reasoned that by filing the federal complaint, Ms. |4Puckworth “opted out” of the class action and,, therefore, could not claim the benefit of the suspension of prescription provided for in La. C.C.P. art. 596. Ms. Duckworth appealed.

Smith v. Louisiana Farm Bureau Mutual Ins. Co.

In a petition filed on December 30, 2008, in the Civil District Court for the Parish of Orleans, Tony Smith alleges that he is the owner of immovable property located in New Orleans, Louisiana, which, on the date Hurricane Katrina struck the city, was also covered by a policy of insurance underwritten by Farm Bureau. Like Ms. Duckworth, Mr. Smith alleges his property sustained damages in the hurricane for which Farm Bureau failed to provide adequate compensation. The petition, also seeking damages and bad faith penalties, likewise alleges that prescription was interrupted by the filing of the Acevedo mass joinder complaint in which Mr. Smith was a named plaintiff.
On March 1, 2011, Farm Bureau filed identical exceptions, an answer, and affirmative defenses to those filed in the Duck-worth proceeding, asserting essentially the same arguments. Mr. Smith responded by acknowledging, as did Ms. Duckworth, that the federal filing was in a court of incompetent jurisdiction and, therefore, did not interrupt prescription. Following Ms. Duckworth’s lead, Mr. Smith argued his claims were nevertheless timely because prescription was suspended pursuant to La. C.C.P. art. 596 by the filing of two class action proceedings in which he was a putative class member — Vinturella, and State of Louisiana, et al. v. AAA Insurance, et al., no. 07-8970, on the docket of the Civil District Court for the Parish of Orleans (the “Road, \ -Home ” litigation).[1] Mr. Smith asserted that at the time of the filing of his petition, the class certification issue in both cases remained unresolved.
Following a hearing on May 13, 2011, the district court granted Farm Bureau’s exception of prescription. In written reasons, the court concluded that because Mr. Smith filed the instant litigation prior to a decision on class certification in either of two class action proceedings on which he relied to suspend prescription, he “opted out” of both classes. In making this determination, the district court cited to, and relied primarily on, the case of Lester v. Exxon Mobil Corp., 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La.12/17/10), 51 So.3d 14, which resorted to federal jurisprudence to hold that a plaintiff who files an independent action while the issue of class certification is unresolved “opts out” of the class action proceeding and waives the benefit of the tolling of prescription created by the pending certification issue. Applying the rule *1061 of Lester to the instant case, the district court concluded that because Mr. Smith filed his independent suit prior to a class certification in Vinturella and the Road Home cases, he waived the benefit of the suspension of prescription that those pending class certifications provided and his claims, filed long after the August 30, 2007, legislatively-imposed deadline for filing claims for damages caused by Hurricane Katrina, are prescribed. Mr. Smith appealed the adverse ruling.

Proceedings in the Court of Appeal

Because the cases are factually similar and the issue to be decided is the same, the Duckworth and Smith appeals were consolidated in the court of appeal.
| ^Following briefing and argument, the court of appeal affirmed the judgments of both lower courts. Duckworth v. Louisiana Farm Bureau Mutual Insurance Co., 11-0837 (La.App. 4 Cir. 11/23/11), 78 So.3d 835. In doing so, the appellate court, like the district courts, drew upon the Lester decision, as well as two additional decisions presenting the same factual scenarios: Katz v. Allstate Ins. Co., 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, and Dixey v. Allstate Ins. Co., 09-4443, 2011 WL 4403988 (unpublished). Noting that “[a]ll three cases hold that a plaintiff forfeits his entitlement to rely on the suspension provisions of La. C.C.P. art. 596 when he files an individual lawsuit prior to the certification of the class in the lawsuit upon which he relies to suspend prescription,” the court of appeal held that the plaintiffs, who “filed individual lawsuits prior to the certification of the two class actions upon which they rely,” effectively “opted out” of the class actions. Duckworth, 11-0837 at 4, 78 So.3d at 837. For this proposition, the court of appeal relied on a concurrence in Katz:
[Fjederal district court cases from various jurisdictions ... hold that a plaintiff who files an independent action before a determination on class certification has been made cannot benefit from the tolling of prescription applicable to putative class members under federal law. The underlying rationale for this rule, which is that the plaintiff has effectively “opted out” of the class action by filing his own suit, seems to apply to the instant situation as well.
Duckworth, 11-0837 at 4-5, 78 So.3d at 837, quoting Katz, 04-1133 at 7, 917 So.2d at 447-48 (Murray, J., concurring). Finding itself constrained to apply the rationale of Katz, the court of appeal concluded the judgments of the district courts dismissing the plaintiffs’ claims on grounds of prescription were correct and affirmed the judgments below. Id.
|7We granted certiorari to review the correctness of the court of appeal’s ruling. Duckworth v. Louisiana Farm Bureau Mutual Ins. Co., 11-2835 (La.3/30/12), 85 So.3d 99.
LAW AND ANALYSIS
The issue presented for our resolution can be simply stated: Does a plaintiff who is a putative class member, but who elects to file a separate suit prior to a resolution of the class certification issue, effectively “opt out” of the class action and forfeit the benefit of the suspension of prescription resulting from the filing of the class action?
While the issue is one of first impression in this court, it has been the subject of examination in the appellate courts. The Fourth Circuit first touched upon the issue in Katz, supra. In Katz, the plaintiff filed suit against his homeowner’s insurer, Allstate, for damages sustained by the insured property in a January 23, 2000 hailstorm. Id., 04-1133 at 1, 917 So.2d at 444. The suit was filed on August 23, 2001. Id. Allstate filed a peremptory exception of *1062 prescription arguing that the policy of insurance on plaintiffs home clearly required that suit be brought within one year after the inception of the loss or damage. Id. The district court sustained the exception of prescription and the plaintiff appealed. Id., 04-1133 at 2, 917 So.2d at 444. On appeal, the plaintiff argued, inter alia, that the district court erred in failing to find that prescription on his claim was suspended pursuant to La. C.C.P. art. 596 by the timely filing of a class action lawsuit arising out of the hailstorm. Id., 04-1133 at 4, 917 So.2d at 445. The majority of the court of appeal rejected this argument, stating:
Allstate submits that Mr. Katz elected to file his individual lawsuit and failed to do so timely. Moreover, Allstate argues that Mr. Katz should not be allowed to revive his prescribed action by claiming the benefit of |8a class action in which he never intended to participate. Allstate further maintains that Mr. Katz’s reliance on La. C.C.P. art. 596 is misplaced because the article makes no reference to limitations periods imposed as a matter of contract between a defendant and a putative class member. We conclude that the filing of the class action did not alter the contractual prescriptive period that this court has heretofore held to be valid and that this argument is without merit.
Katz, 04-1133 at 7, 917 So.2d at 447 (emphasis added). In a concurring opinion, Judge Murray “expanded upon” the majority’s discussion of whether the filing of the class action lawsuit suspended prescription on plaintiffs claim, explaining:
Allstate argues that the reference to “liberative prescription” in La. C.C.P. article 596 means that the suspension granted under that article does not ap,ply to contractual prescription periods such as the one at issue herein. In addition, Allstate cites federal district court cases from various jurisdictions which hold that a plaintiff who files an independent action before a determination on class certification has been made cannot benefit from the tolling of prescription applicable to putative class members under federal law. The underlying rationale for this rule, which is that the plaintiff has effectively “opted out” of the class action by filing his own suit, seems to apply to the instant situation as well.
Id., 04-1133 at 1, 917 So.2d at 447-48.
The majority’s precise holding in Katz— that the filing of the class action lawsuit did not alter the contractual prescriptive period set forth in the insurance contract — was subsequently repudiated by this court in Taranto v. Louisiana Citizens Property Ins. Corp., 10-0105 (La.3/15/11), 62 So.3d 721. In Taranto, the plaintiffs filed suit against their property insurer, Louisiana Citizens Property Ins. Corp. (“Citizens”), seeking damages for losses incurred during Hurricane Katrina. Id., 10-0105 at 2-3, 62 So.3d at 724-725. The suit, filed June 27, 2008, was instituted after the passing of deadlines established by 2006 La. Acts Nos. 739 and 802, which extended by one year the time for filing claims for losses sustained during Hurricanes Katrina and Rita and after the September 4, 2007 deadline Citizens contractually |3extended to its insureds for filing such claims. Id., 10-0105 at 3, 62 So.3d at 724-725.
Citizens filed an, exception of prescription, which was sustained by the district court. Id. The court of appeal reversed that judgment, concluding that pursuant to La. C.C.P. art. 596, prescription on plaintiffs’ claim was suspended by the timely filing of a class action lawsuit against Citizens in which the plaintiffs were putative class members. Taranto v. Louisiana Citizens Property Ins. Corp., 09-0413 (La.App. 4 Cir. 12/16/09), 28 So.3d 543, writ *1063 granted, 10-0105 (La.4/16/10), 31 So.3d 1068.
Before this court, Citizens argued that La. C.C.P. art. 596 does not apply to “contractual limitations” periods like those in its policy; rather, it applies only to “libera-tive prescription,” ie., prescriptive periods fixed by law or established by legislation. Taranto, 10-0105 at 9, 62 So.3d at 728. As authority for this proposition, Citizens relied on the court of appeal’s decision in Katz. After examining the relevant law and jurisprudence, this court in Taranto ultimately rejected Citizens’ argument and Katz’s specific holding, reasoning that, because legislation sets the perimeters of the applicable prescriptive period from which the parties to an insurance contract are not free to deviate,[2] the contractual limitations period in the Citizens policy is actually one established, if not directly then at least indirectly, by legislation and, thus, the general codal and statutory rules of prescription apply, including La. C.C.P. art. 596’s provision for the suspension of | ^prescription upon the filing of a class action petition.[3] Taranto, 10-0105 at 19, 62 So.3d at 734.
In reaching its conclusion, this court in Taranto discussed the Katz decision, but, in ultimately rejecting Katz’s precise holding, was not called upon to adjudicate that portion of the decision “expanded upon” in Judge Murray’s concurrence: whether a plaintiff who files an -independent action before a determinátion on class certification has been made effectively “opts out” of the class and forfeits the benefit of La. C.C.P. art. 596’s suspension of prescription. This is because the plaintiffs in Tar-anto filed their independent suit after the class certification issue had been resolved and, thus, the precise factual scenario presented in Katz was not present in Taran-to.[4] Therefore, Taranto’s discussion of the Katz concurrence was clear obiter dictum, not relevant to the resolution of the issues presented in Taranto or its holding.
While the factual scenario presented in Katz was not present in Taranto, it did present itself in another case, Lester, supra. The underlying facts of Lester, while somewhat complex, can be summarized rather simply. In 2002; a class action proceeding titled In re Harvey Term Litigation was filed in Civil District Court for the Parish of Orleans. Lester, 09-1105 at 3, 42 So.3d at 1073. In that proceeding, damages were sought for personal injuries suffered as a result of exposure to radioactive material that accumulated in pipes used in oil production. Id. Subsequent Into the filing of the class action, but prior to an April 14, 2008 judgment denying *1064 class certification, plaintiffs filed an independent suit seeking wrongful death damages for their deceased spouses’ exposure to these radioactive materials. Id., 09-1105 at 3-4, 42. So.3d at 1073. The defendants excepted to the suit on grounds of prescription. Id.
In reviewing the district court judgment sustaining the exception of prescription, the court of appeal framed the issue before it as follows: “whether the plaintiffs effectively opted out of the class action by the filing of the petition for damages prior to the court ruling on class certification.” Lester, 09-1105 at 4, 42 So.3d at 1073. Acknowledging that Louisiana, unlike its federal counterpart, has codified its rule with regard to the tolling of prescription during the pendency of a class action proceeding (La.C.C.P. art. 596), the court of appeal drew from the example of Judge Murray’s concurrence in Katz and, notwithstanding La. C.C.P. art. 596, resorted to federal jurisprudence to conclude “the plaintiffs, by filing the Lester case prior to a ruling on class certification, in the In re Harvey Term Litigation opted out of the class action suit and, therefore, the pen-dency of that suit did not serve to suspend prescription.” Lester, 09-1105 at 9, 42 So.3d at 1076.
In the instant case, the court of appeal relied exclusively upon Lester, the concurrence in Katz, and a decision out of the federal district court, Dixey, to find suspension did not occur and the plaintiffs’ actions prescribed. Duckworth, 11-0837 at 4, 78 So.3d at 837. Plaintiffs insist that the appellate court’s reliance on these cases, which draw exclusively from federal jurisprudence, is misplaced and that the answer to the inquiry posed in this instance can be found in the unambiguous provisions of the Louisiana Code of Civil Procedure. We agree.
| i2In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law, See, La. C.C. art. 1; Doerr v. Mobil Oil Corp., 00-0947, p. 13 (La.12/19/00), 774 So.2d 119, 128. Therefore, as the solemn expression of the legislative will, if an enactment provides a solution to a particular situation, then no jurisprudence, usage, equity or doctrine can prevail over the legislation. See La. C.C. arts. 2 and 3. It is only when a particular situation is not covered by legislation that a solution can be sought elsewhere. La. C.C. art. 4.
The judiciary’s role in the civil law, first and foremost, is not to legislate from the bench, but to interpret the legislative will and apply statutory pronouncements to specific cases. Albert Tate, Jr., Techniques of Judicial Interpretation in Louisiana, 22 La.L.Rev. 727, 728 (1962) (“The Louisiana judge must, as stated, find primarily in legislative enactments the legal principles to be applied in deciding the case before him.”). Interpretation of the legislative will is accomplished through the rules of statutory construction. Pursuant to these rules, the interpretation of a legislative enactment begins with the language of the law itself. In re Succession of Faget, 10-0188, p. 8 (La.11/30/10), 53 So.3d 414, 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written, and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. Unequivocal provisions are not subject to judicial construction and should be applied by giving the words their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3; Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 12 (La.12/16/11), 79 So.3d 987, 997. Further, laws on the same subject matter are to be interpreted in reference to each other. La. C.C. art. 13.
*1065 1^Keeping these precepts in mind, we note the class action is a unique joinder device imported into Louisiana procedure with the adoption of the Code of Civil Procedure in 1960. Frank L. Maraist, 1 Louisiana Civil Law Treatise:. Civil Procedure § 4.12, p. 99 (2d ed.2008). Modeled after Fed. Rule Civ. Proc. 23 as.originally enacted, Louisiana’s class action rules underwent a comprehensive revision in 1997. Id. at 100-101 and fn. 10. As explained by respected commentator Professor Frank Maraist, this “revision confirmed some of the previous requirements for maintenance of a class action, added an additional requirement, and adopted four specific types of class actions.” Id. at 101. It also provided detailed rules for the prosecution and compromise of a class action and for some of its important “side effects” such as attorney fees. Id. And, in La. C.C.P. art. 596, the revision added a provision expressly providing for the suspension of prescription as to the claims of members of a class or. a putative class.[5] Id. at' footnote 20 and accompanying text. Consistent with the dictates of the civil law, this court must first look to the language of this codal provision in resolving the issue presented here — not the jurisprudence and not the decisions of the federal courts.
Louisiana Code of Civil Procedure art. 596 provides, in relevant part:
A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person’s election form;
| u(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
As we have previously explained, La. C.C.P. art. 596 is a special provision, the purpose of which is to prevent prescription from accruing against the claims of members of a putative class action until such point as the propriety of the class action or the member’s participation in the class action is determined. Taranto, 10-0105 at 11, 62 So.3d at 729. In other words, the article rests on the premise that members of a putative class are treated as parties to the action and, thus, for prescription purposes as having instituted their own actions, for as long as they remain members of the class.
Therefore, according to the plain language of La. C.C.P. art. 596, a petition brought on behalf of a class suspends prescription as to “all members” of the class “as described or defined therein.” This suspension continues until thirty days after one of three events occurs: (1) a person elects to be excluded from the class by *1066 submitting an election form; (2) a person is excluded from the class by the redefinition or restriction of the class (and notice thereof is issued); or (3) the action is dismissed, the demand for class relief is stricken, or class certification is revoked or refused (and notice thereof issued). In other words, suspension continues unless or until an individual ceases to be a member of the class. And an individual ceases to be a member of the class when one of three events occurs. These three events are the ¡^exclusive statutory triggers for recommencing the accrual of liberative prescription on the claims of those persons described or defined in the class action petition.
Beginning with the concurrence in Katz, continuing through Lester, and culminating in the present case, the appellate courts have drawn from federal jurisprudence to essentially engraft onto the codal provision a fourth trigger: the filing of an individual lawsuit prior to a ruling on the class certification issue. However, after examining the language of La. C.C.P. art. 596, in conjunction with the body of articles on class action procedure and the purpose behind prescriptive statutes, we find that the creation of such a jurisprudential exception is unwarranted for several reasons.
First, by adding an exception to La. C.C.P. art. 596’s suspension provisions, the decision of the appellate courts violates the basic rule that prescription statutes are to be strictly construed against prescription and in favor of the claim sought to be extinguished. Taranto, 10-0105, at 5, 62 So.3d at 726; Bailey v. Khoury, 04-0620, 04-0647, 04-0684, p. 9 (La.1/20/05), 891 So.2d 1268, 1275.
Second, the importation of a jurisprudential exception fails to honor and adhere to the express language of the code article. The first paragraph of La. C.C.P. art. 596 states that “[ljiberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members ' of the class as defined or described therein.” La. C.C.P. art. 596 (emphasis added). Consistent with the plain wording of this provision, the only requirement for obtaining the benefit of the article’s suspension of prescription is that one fall within the definition or description of a putative class member. Unless the class is specifically defined or described to exclude those who file individual suits, the fact that an individual lawsuit may or may not have been filed |16is simply not relevant to the determination of whether a person falls within the definition or description of a putative class member.
Further, the language of the article clearly indicates that prescription, once suspended, does not recommence until the propriety of the class action or the member’s participation in the action is judicially determined — either by a judgment certifying the class (and the timely submission of an election form), by a judgment restricting or redefining the membership of the class, or by a judgment dismissing the class action, striking the demand for class relief or denying certification — and until the requisite notice is issued. See La. C.C.P. art. 596(2) and (3); La. C.C.P. art. 592(B). A finding that the filing of an independent lawsuit prior to such a judicial determination, and in the absence of the required notice, “forfeits” the benefit of suspension under La. C.C.P. art. 596 is, thus, inconsistent with the article’s temporal requirement.
The Katz/Lester line of cases and the decision of the court of appeal in this case are, at their core, premised on the assumption that filing an individual lawsuit is equivalent to “opting out of’ or electing to be excluded from a class. This is not an entirely unreasonable assumption and in fact, some authority for the proposition *1067 can be found in an early decision from this court, Williams v. State, 350 So.2d 131 (La.1977). In Williams, the court recognized that the Louisiana class action articles in effect at that time contained no statutory provision requiring notice to members of a class of the existence and pendency of a class action proceeding, although those members would be bound by the judgment whether they received actual notice or not. Id. at 137. Recognizing that federal (if not also state) due process requires that at some stage in the proceedings, preferably the early stages of litigation, all identifiable prospective members of the class be given reasonable notice of the pendency of the 117litigation and the opportunity to opt out of or join in the action, the court held that, even in the absence of statutory authority, courts are authorized to provide for such reasonable notice as will entitle the identifiable members of a class to avail themselves of or disclaim representation of their interests by the class action. Id. at 137-138. In defining the contours of this notice, the court noted that it would be unnecessary, on remand, for notice to be directed to those who had already indicated a desire to join the class action or to those “who have filed separate suits (who thus presumably opted out of the class action) ...”
Id. at 138. The defendant in this case seizes upon this language as controlling on the issue of whether the filing of an individual suit is the equivalent of “opting out of’ or electing to be excluded from a class.
However, Williams was decided in 1977, prior to the comprehensive revision of the class action procedure articles in 1997. Whatever effect the filing of an individual suit may have had prior to the revisions, a review of the class action articles after the 1997 revision indicates that the filing of an individual action is not a method contemplated by the legislature for exclusion from a class or for “forfeiting” the suspension of prescription provided in La. C.C.P. art. 596.
Under the 1997 revisions, four types of class actions are potentially available in Louisiana. See La. C.C.P. art. 591(B)(1-4). The law does not provide any mechanism for members of one of the first two types of class actions to “opt out.” La. C.C.P. art. 591(B)(1) or (2).[6] A judgment in either will bind all members of the class. 1 1sMaRaist, 1 Louisiana Civil Law Treatise: Civil Prooedure, § 4.12 at 102-103. A judgment ■ in the third type, an Arti-clel(B)(3) class,[7] binds all members who do not request exclusion. La. C.C.P. art. 592(B)(2)(c).[8] In the Article 591(B)(3) *1068 class, this exclusion is achieved after notice, which must be given “as soon as practicable after certification, but in any event early enough that a delay provided for the class members to exercise an option to be excluded from the class will have expired before commencement of the trial on the merits of the common issues.” La. C.C.P. art. 592(B)(1). And, exclusion is effected by submitting an election form. See La. C.C.P. art. 592(B)(2)(b).
Thus, with the 1997 revisions to the Code of Civil Procedure articles on class actions, the legislature enacted a comprehensive scheme providing for notice of the pendency of class actions and the opportunity to exercise an option to be excluded from the class. Unlike its federal counterpart, Fed. Rule Civ. Proc. 23, in which there is no set procedure or form for requesting exclusion,[9] Louisiana has chosen to tie exclusion from a class (and the recommencing of prescription under Article 596(A)(1)) to the submission of an election form. Had the legislature intended for the filing of an individual lawsuit to constitute one of the methods for “opting out of’ or electing exclusion from a class, the legislature could have added appropriate language to that effect to the relevant, articles. It did not; thus, the filing of an individual | ^lawsuit is not, pursuant to the Code of Civil Procedure articles, a means of requesting exclusion from a class and/or of recommencing the prescriptive clock. The lower courts’ conclusion in this case— that the filing of an individual lawsuit by a member of a putative class prior to a ruling on the class certification issue operates as an “opt out” of the class action and a forfeiture of the suspension provisions of La. C.C.P. art. 596 — is, thus, inconsistent with the letter of the law.
It is also inconsistent with its spirit. By definition, liberative prescription is a mode of barring actions as a result of inaction for a period of time. La. C.C. art. 3447. As we have explained: “The fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof.” Cichirillo v. Avondale Industries, Inc., 04-2894, 04-2918, p. 9 (La.11/29/05), 917 So.2d 424, 430. Under the interpretation of La. C.C.P. art. 596 adopted in Lester and applied by the courts below, by filing their individual suits prior to a ruling on the class certification issue, plaintiffs are in effect being penalized for filing suit too soon. In other words, the courts below acknowledge, and the defendant concedes, that plaintiffs’ lawsuits would be timely under La. C.C.P. art. 596 had they waited until a resolution of the class certification issue and then filed suit. It is only because plaintiffs filed their claims before a ruling on class certification that those claims have been dismissed as prescribed. In effect, the lower courts have interpreted La. C.C.P. art. 596 as establishing a type of prescriptive purgatory which begins on the date a particular claim would have prescribed if not for the filing of the class action and ends on the date a decision on class certification becomes final. Under the lower courts’ interpretation of the article, any lawsuit filed during that period is prescribed. This is true despite the fact that, by virtue of the |2(lfiling of the class action proceeding, the purposes of liberative prescription have been served: defendant has been put on notice of the adverse claims against it and the need to preserve evidence to defend against those claims. It is true despite the fact that the institution of an individual suit by a plaintiff who tires of *1069 waiting for the certification process to resolve itself provides even greater notice to a defendant and furthers the process of identifying, preserving, and developing claims and defenses.
Rather than protect defendants from stale claims, the interpretation of La. C.C.P. art. 596 advanced by the lower courts actually encourages inaction on the part of plaintiffs in pursuing their claims, a result which subverts the very purposes of liberative prescription and fosters, rather than deters, the filing of stale claims. The rules of statutory interpretation do not permit us to condone a construction of La. C.C.P. art. 596 which produces a result so at odds with the plain wording and the obvious intent and purpose of the law as a prescription statute. See Credit v. Richland Parish School Bd., 11-1003 (La.3/13/12), 85 So.3d 669, 677 (rejecting an interpretation of La. R.S. 17:439(A) by the appellate courts that would render the statute meaningless and leád to absurd results as violating settled rules of statutory construction).
Citing Lester and Taranto, defendant nevertheless posits that La. C.C.P. art. 596 is a codification of the tolling rule first introduced to the federal class action in American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Taranto, 10-0105 at 10, 62 So.3d at 729 (noting that in American Pipe & Constr. Co., the court held that filing a class action “suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.”); Lester, 09-1105 at 8, 42 So.3d at 1076 (“Applying the tolling doctrine to separate actions filed prior to class certification would create the livery inefficiency that American Pipe sought to avoid.” quoting favorably, Calvello v. Electronic Date Systems, 00CV800 (W.D.N.Y.4/15/04), 2004 WL 941809, at p. 4 (unpublished)). As such, defendant argues that the purpose of suspending prescription under La. C.C.P. art. 596 is the same as that under Fed. Rule. Civ. Proc. 23: to avoid a “multiplicity of activity” — i.e., the filing of numerous protective, placeholder suits — that would otherwise result if prescription was not suspended during the certification process. American Pipe, 414 U.S. at 551, 94 S.Ct. 756. According to defendant, this purpose is subverted when plaintiffs are permitted to file separate actions before the decision on class certification is made. For that reason, defendant argues that the benefit of suspension of prescription should only be available for those who decide, at the institution of a class action proceeding, to avail themselves of the class action. It should not be extended to those who, by filing an individual suit prior to a resolution of the class certification issue, indicate an intent not to participate in the class action.
While defendant’s position has some superficial appeal,[10] it is ultimately unconvincing. First, it is based on the proposition that putative class members are required to make a choice at the institution of a class action proceeding to join the proceeding or forego it. Such is clearly not the case. Under the articles governing Louisiana’s class action, all persons possessing claims arising out of transactions or occurrences described in a class action petition are members of the class and are bound by any judgment in the *1070 action, unless they timely request exclusion. The decision to request exclusion or to “opt out” is made, not at the time of filing a class faction petition, but after the class is certified, notice is issued, and a timely election form is submitted. La. C.C.P. art. 592(B) and (C).[11]
Furthermore, and contrary to defendant’s contention, the purpose of Louisiana’s rule suspending prescription until such time as the propriety of the class action or the member’s participation in the class action is determined is not solely to avoid a multiplicity of lawsuits. Louisiana’s current rules clearly contemplate the possibility of a multiplicity of individual suits because plaintiffs (at least insofar as those who are members of La. C.C.P. art. 591(B)(3) classes are concerned) are allowed to submit election forms requesting exclusion from the class. Indeed, the existence of multiple lawsuits is not an interest that prescription statutes, such as La. C.C.P. art. 596 are typically designed to protect, although in this instance, it might be an incidental benefit of the rule. It is not even clear that the construction of La. C.C.P. art. 596 that defendants would have this court adopt would promote the goal of avoiding multiple lawsuits because the rule, which would require putative class members to await a determination on class certification in order to avail themselves of the benefits of the suspension of prescription, would conceivably only affect when an individual suit is filed — not whether it is filed.
Finally, drawing from language in Wilkienson v. Louisiana Farm Bureau Mut. Ins. Co., 11-1421 (La.App. 1 Cir. 3/23/12), 2012 WL 996539, at p. 3 (unpublished), defendant argues that allowing plaintiffs who file individual claims prior to a ruling on class certification the benefit of La. C.C.P. art. 596’s suspension “result[s] in a legal sleight of hand” whereby they are permitted to rely on a | ^representative suit as a placeholder for purposes of prescription and then abandon- the suit later, “when the first no longer .suits” them.[12] Id., 2012 WL 996539, at p. 3. However distasteful this may seem to the defendant, such a result is precisely what the law contemplates and what occurs when a plaintiff timely submits an election form seeking exclusion from a class after it has been certified. The only question that is raised here is whether a putative class member can make that decision sooner, i.e., before the certification issue is resolved, and, therefore, provide earlier notice to a defendant, or later, after the certification issue is resolved. There is nothing in the language of La. C.C.P. art. 596 that does not extend the benefit of suspension in the sooner situation.
Ultimately, the Katz/Lester line of cases and the arguments advanced by defendant in support thereof are based on a line of cases from the federal courts. While we find the answer to the inquiry posed in this case is properly found in the provisions of Louisiana law and, more particularly, in the language of La. C.C.P. art. 596 itself, we note, parenthetically, that the federal courts themselves are split on the issue of whether class action tolling applies to all members of a putative class, regardless of whether a ruling on certification has been made. While earlier cases, notably those from the First and Sixth Circuit Courts of Appeals,[13] held that class action tolling *1071 does not extend to plaintiffs filing suit before the issue of class certification is decided, more recent eases have-begun to adopt the view that tolling is appropriate in such situations.[14] See, State Farm Mut. Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1230-1235 (10th Cir.2008); In. re Hanford Nuclear Reservation Litigation, 534 F.3d 986, 1008 (9th Cir.2008), cert. denied sub nom., E.I. duPont de Nemours & Co. v. Stanton, 555 U.S. 1084, 129 S.Ct. 762, 172 L.Ed.2d 754 (2008); In re World-Com Securities Litigation, 496 F.3d 245, 255-256 (2nd Cir.2007). , .
After examining the reasoning and logic of the federal court cases in light of the express provisions of Louisiana’s tolling statute — La. C.C.P. art. 596 — we find that the view most consistent with the letter and spirit of Louisiana statutory law is that which extends the benefits of tolling to those who file individual suits prior to the resolution of the class certification issue.[15] In particular, we find the decision of the federal district court in Lehman v. United Parcel Service, Inc., 443 F.Supp.2d 1146 (W.D.Mo.2006), to be especially consonant with our views:
While it might be a good idea to have a rule that prohibits individual cases until after class certification is resolved, no such rule exists today. The current Federal Rules of Civil Procedure permit a multiplicity of suits in different jurisdictions after a class is certified because members of the class are permitted to “opt out.” See Rule 23(c). Nor is there anything in the Federal Rules of Civil Procedure that prohibits individual lawsuits being filed in multiple jurisdictions prior to a ruling on a pending motion for class certification. Rule 23 is an efficient way to handle multiple parties, but it is clearly designed to accommodate individual choice as well. While it might be argued that individual choice is not a good idea in this context, such an argument would justify a new rule. It would not justify ignoring the structure of the current rule, and a clear directive from the United States Supreme Court. Finally, it would be ironic to say that [plaintiff] has filed his case too soon and, therefore/it must be dismissed because the statute of limitation is violated. It would turn the purpose of the statute of limitations on its head to say that [plaintiff] must wait until the dispute is more stale before he can file his individual case.
Lehman, 443 F.Supp.2d at 1151. The same rationale applies with equal force to the provisions of Louisiana law.
In sum, we find that, interpreted and applied according to its express terms, La. C.C.P. art. 596 provides for the suspension of liberative prescription “on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class ... as to all members of the class as defined or described therein,” until such time as those individuals cease to be members of the class. The article also provides a list of discrete, specific, and clear triggering events delineating when class membership ceases for prescription purposes. The fil *1072 ing of an individual lawsuit prior to a ruling on class certification is not one of them. In fact, there is nothing in the statutory law that denies the benefit of the suspension of prescription to those who file individual lawsuits prior to a ruling on class certification and we decline to read such an exception into the law.[16] Carter v. Duhe, 05-0390, p. 10 (La.1/19/06), 921 So.2d 963, 970 (“[I]t is not the function of the judicial branch in a civilian legal system to legislate by inserting ... provisions into statutes where the legislature has chosen not to do so.”).
Applying La. C.C.P. art. 596 in the manner that we do today is not only consistent with the dictates of the language of the article and our civilian mandate, but it promotes certainty and predictability in the administration of the law and at the same time does not unduly burden a defendant with stale claims. As to the complaint that our holding will unfairly subject defendants to multiple filings, there are avenues available to a defendant to ameliorate the inconvenience or burden of de-fendingj^multiple actions that do not undermine the letter and the spirit of the law.[17] To the extent the Lester decision (on which the courts below relied) holds that the filing of an individual lawsuit by a member of a putative class prior to a ruling on the class certification issue operates as an “opt out” of the class action and a forfeiture of the suspension provisions of La. C.C.P. art. 596, it is hereby overruled.
Having determined that the lower courts committed legal error in holding that the plaintiffs’ filing of individual lawsuits before resolution of the class certification issue in the class actions in which they were putative members forfeited their entitlement to rely on the suspension provisions of La. C.C.P. art. 596, we must next examine whether, applying the correct rule of law, plaintiffs claims are prescribed.
Generally, the party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face, in which case the burden shifts to the plaintiff. Cichirillo, 04-2894, 04-2918 at 5, 917 So.2d at 428; Bailey, 04-0620, 04-0647, 04-0684 at 9, 891 So.2d at 1275. Although evidence may be introduced to support or controvert any objection pleaded, in the absence of evidence, an objection of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true. La. C.C.P. art. 931; Cichirillo, 04-2894, 04-2918 at 5, 917 So.2d at 428.
In this case, the petitions of both Ms. Duckworth and Mr. Smith affirmatively allege that prescription on the asserted claims was “interrupted pursuant to Louisiana Civil Code Article 3463 with the filing in the United States District Court for the Eastern District of Louisiana on August 29, 2007, the case of Acevedo, et al. v. AAA Insurance, et al., Docket No. 07-5199.”[18] Based on these allegations, it appears that both plaintiffs made a prima facie showing that their claims were timely filed, leaving the burden of proving prescription with defendant.
*1073 In its exceptions of prescription, defendant argued that the federal filing could not interrupt prescription on plaintiffs’ claims because the federal court was not a court of competent jurisdiction. In opposing this exception, both plaintiffs acknowledged that the federal filing was in a court of incompetent jurisdiction, shifting the burden back to plaintiffs to establish their petitions were nonetheless timely. In an effort to meet their burdens, plaintiffs argued they were putative class members in the Vinturella class action petition, originally filed on October 6, 2006, and amended on August 29, 2007, to add class action claims, and that the class certification issue in Vinturella remains unresolved.[19]
At the subsequent hearing on the exception of prescription, the district court in the Duckworth case took judicial notice of the Vinturella pleadings.[20] A review of those pleadings in conjunction with the allegations of her individual petition leaves no doubt that Ms. Duckworth fits the description of the putative class defined in Vinturella,[21]
| ¡^Although this court has not been provided a transcript of the hearing in the Smith case, the district court found in written reasons that “the issues in his [Smith’s] pending class action and those in this individual suit are the same.” Therefore, because both plaintiffs established they are putative members of the Vintu-rella class “as defined or described therein,” plaintiffs are entitled to the benefit of the suspension of prescription provided by La. C.C.P. art. 596. The respective district courts erred in granting the exceptions of prescription and dismissing their lawsuits.
CONCLUSION
Because plaintiffs were members of a class asserted in a pending class action petition in which the class certification issue remains unresolved, prescription on their individual actions was suspended pursuant to La. C.C.P. art. 596. The judgments of the district courts sustaining defendant’s exceptions of prescription and dismissing plaintiffs’ petitions as prescribed are reversed and the cases are remanded to the respective district courts for further proceedings.
REVERSED AND REMANDED.

. According to the pleadings, the Road Home suit was subsequently removed to the United States District Court for the Eastern District of Louisiana and consolidated into the In re: Katrina Canal Breaches Consolidated Litigation, No. 07-5528, on the docket of that court.

. As pointed out in Taranto, two provisions of law set the perimeters of the applicable prescriptive period: La. C.C. art. 3499, which provides that an action on a contract is a personal one, subject to the liberative prescription of ten years; and La. R.S. 22:629(A)(3), which, at the time, provided that no insurance contract issued for delivery in this state shall contain any stipulation limiting the right of action against an insurer to a period of less than twelve months after the inception of the loss. Id., 10-0105 at 19, 62 So.3d at 734.

. The court additionally found that the contractual limitation period in the Citizens policy, to the extent it purports to "opt out” of prescription, abrogate the prescriptive periods established by law, or divest' said time limitations of their prescriptive nature, runs afoul of the prohibition of La. C.C. art. 3471. Taranto, 10-0105 at 16, 62 So.3d at 732.

. In Taranto, the plaintiffs filed their independent suit within the time remaining under La. C.C.P. art. 596 after being excluded from two earlier, timely filed class actions: Buxton v. Louisiana Citizens Property Ins. Corp., 06-8341, on the docket of the Civil District Court for the Parish of Orleans and Chalona v. Louisiana Citizens Property Ins. Corp., 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494. Taranto, 10-0105 at 13-14, 62 So.3d at 730-31.

. In this respect, Louisiana class action law differs from its federal counterpart. Federal Rule of Civil Procedure 23 does not contain a tolling provision. The federal tolling rule is a jurisprudential creation. See American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

. The Article 591(B)(1) class action is, by definition, one in which the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class or a risk of adjudications which would dispose of or substantially impair the rights of other members of the class who are not parties to the adjudication.
The Article 591(B)(2) class action is, by definition, one in which, because of the conduct of the party opposing the class, injunc-tive or declaratory relief would be appropriate to the class as a whole.

. The Article 591(B)(3) class action is, according to the commentators, a ‘'spurious-type” class action imported from Federal Rule 23(b)(3), but with some additional limitations. Maraist, 1 Louisiana Civil Law Treatise: Civil Procedure, § 4.12 at 103.

.The 1997 legislation does not specifically provide for the binding effect of an Article 591(B)(4) settlement class, the fourth type of class action, which is basically an Article 591(B)(3) class certified for settlement purposes even though the specific requirements for maintenance of an Article 591(B)(3) class are otherwise not met. However, one commentator has suggested the Article 591(B)(4) class action will be governed by the rules regulating the Article 591(B)(3) class action. Maraist, 1 Louisiana Civil Law Treatise: Civil Procedure, § 4.12 at 105 n. 59.

. Under the federal rule, a court must simply send notice to class members describing "the time and manner for requesting exclusion.” Fed. Rule. Civ. Proc. 23(c)(2)(B)(iv).

. Indeed, as Lester points out, it is a position that has garnered favor in and been adopted by a number of federal courts to consider the issue in the context of class actions brought pursuant to Fed. Rule. Civ. Proc. 23. See, e.g., Wyser-Pratte Mgt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 568-569 (6th Cir.2005); Glater v. Eli Lilly & Co., 712 F.2d 735, 739 (1st Cir.1983); Wachovia Bank & Trust Co. v. Natl. Student Mktg. Corp., 650 F.2d 342, 346 fn. 7 (D.C.Cir.1980).

.In fact, because there is no requirement that notice of the filing of a class action be provided to potential class members, an individual may not even know of the existence of the proceeding until after a decision on certification is made. Thus, it is presumptuous to assume, as defendant’s argument does, that the filing of an individual lawsuit is a choice to forego the class action.

. Pun appears in the original.

. See footnote 10, supra.

. In fact, the line of federal district court cases cited and relied upon in Lester were subsequently overruled by the Second Circuit Court of Appeals. In re Worldcom Securities Litigation, 496 F.3d 245 (2d Cir.2007).

. We have previously noted that to the extent Louisiana’s class action provisions ■ parallel Fed. Rule Civ. Proc. 23, our analysis is appropriately informed by federal jurisprudence interpreting Rule 23. Price v. Martin, 11-0853, p. 7 (La.12/6/11), 79 So.3d 960, 967 n. 6. However, although we carefully consider federal district and appellate court decisions, we are not bound to follow them. Chittenden v. State Farm Mutual Auto. Ins. Co., 00-414, p. 13 (La.5/15/01), 788 So.2d 1140, 1149 n. 21.

."[T]he time honored maxim, expressio uni-us et exclusio alterius ... teaches us that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional.” Theriot v. Midland Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 187.

. For example, and by way of illustration only, a declinatory exception of lis pendens is one tool available to defendants when multiple suits are pending.

. As explained earlier, this federal filing was not a class action, but a mass joinder proceeding.

. As noted earlier, Mr. Smith additionally alleged he was a putative class member in the Road Home litigation. Based on his reliance on Vinturella, we do not need to reach the issue of whether the Road Home litigation suspends prescription for Mr. Smith. This issue, whether La. C.C.P. art. 596 suspends prescription when a putative class action is filed in another jurisdiction, is addressed in Quinn v. Louisiana Citizens Property Ins. Corp., 12-0152 (La.-1-/12), - So.3d. -, released simultaneously with this opinion.

. The district court elected to pursue this course in lieu of counsel introducing the pleadings into evidence.

. That class is defined as: "All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place on August 29, 2005 a fire (homeowner’s) insurance policy with Louisiana Farm Bureau Mutual Insurance Company or Louisiana Farm Bureau Casualty Insurance Company, who sustained a covered loss of, or damage to, such property and such property was rendered a total loss as a result of Hurricane Katrina."
Because no evidence was introduced at the hearing, the allegations of Ms. Duckworth’s petition, i.e., that she owned property insured by Farm Bureau that was rendered a total loss as a result of Hurricane Katrina, must be accepted as true. Under those allegations, Ms. Duckworth is clearly a member of the putative class defined in Vinturella.