PAUL A. BONIN, Judge.
11Because both the devastation of the aftermath of Hurricane Katrina and the ensuing first-party claims against the state-created Louisiana Citizens Property Insurance Company are concentrated in our three-parish circuit,[2] we consolidated these two appeals for an en banc determination of recurring issues presented by Citizens’ exceptions of prescription in individual lawsuits in which the plaintiffs rely upon previously filed state or federal class-action lawsuits to toll the prescriptive period.
After the consolidation of these appeals, however, the Supreme Court of Louisiana granted writs of certiorari in two cases, see Duckworth v. Louisiana Farm Bureau Mut. Ins. Co., 11-0837 (La.App. 4 Cir. 11/23/11), 78 So.3d 835, writ granted, 11-2835 (La.3/30/12), 85 So.3d 99, and Quinn v. Louisiana Citizens Property Ins. Corp., 11-937 (La.App. 5 Cir. 9/23/11) (unpublished), writ granted, 12-0152 (La.3/30/12), 85 So.3d 100, the resolution of which we expected would likely impact the disposition of these consolidated cases as well as similar cases | ¡¡which we had stayed pending our own decision.[3] Accordingly, we *463 deferred ruling until the Supreme Court’s decisions became final, which has now occurred. See Duckworth v. Louisiana Farm Bureau Mut. Ins. Co., 11-2835 (La.11/2/12), — So.3d -, 2012 WL 5374248, and Quinn v. Louisiana Citizens Property Ins. Corp., 12-0152 (La.11/2/12), — So.3d -, 2012 WL 5374255, reh’g denied, (La.1/25/13).
Bound by the controlling authority of the Duckworth and Quinn decisions, we decide that in these and similar cases the district court, under the ordinary decisional rules applicable to the exception of prescription (which are summarized in Part III-B, post), must find for each class-action lawsuit upon which the plaintiff relies for tolling, first, that such class-action lawsuit was filed on or before September 4, 2007, in a Louisiana court of competent jurisdiction and proper venue, or, if in a Louisiana court of competent jurisdiction but not of proper venue, |sthat Citizens was served with process by that date; second, that such class-action lawsuit has been continuously pending in a Louisiana court of competent jurisdiction; and third, that there are facts which affirmatively establish that the plaintiffs current claim arises out of the transactions or occurrences described in the class-action lawsuit such that the plaintiff was a putative member of the proposed class as described. Next, the court must find that the plaintiffs individual lawsuit was timely filed within the time remaining for the period of the suspension of prescription as specifically provided by La. C.C.P. art. 596.
If the plaintiffs individual lawsuit satisfies these factual criteria, a district court shall overrule Citizen’s exception of prescription; if it does not, then its exception shall be sustained.
When these exceptions were submitted for decision, neither the parties nor the district judges had the benefit of the Supreme Court’s views on these issues, and especially given the overruling of the decision of a panel of this court[4] in Duck-worth, supra (respecting the opt-out effect of the filing of an individual lawsuit alone without the submission of an election form, by which the person Selects to be excluded from the class prior to a ruling on certification), we vacate the judgments sustaining the exceptions of prescription and re *464 mand these cases to their respective trial judges for a complete evidentiary hearing on Citizens’ exception of prescription.
To expedite the consideration of the issues, which may be presented on remand, and to assist the district court and the parties, in accord with Quinn’s directive, we authorize the plaintiffs to file their amendments within thirty days of the finality of this judgment to remove any grounds for the objection under La. C.C.P. art. 934. After the expiration of that period, Citizens may amend its exceptions, if necessary, and re-urge its exception of prescription.
In the following Parts we explain our decision in greater detail.
I
On August 29, 2005, Hurricane Katrina struck St. Bernard Parish, damaging, if not obliterating, virtually all of its housing stock and scattering its residents to the far corners of the nation. It is out of this unparalleled disaster, and the herculean post-Katrina rebuilding efforts of St. Bernard Parish’s remaining residents, that these consolidated claims arise. The present case, as noted, presents largely legal questions. The answers to these questions, however, must be applied within the factual context of distinct lawsuits. In this Part, we first describe the special status of Citizens as a property insurer, then turn to discuss the facts underlying both the An-sardi and Johnson suits, review their respective procedural histories, and briefly discuss the facts underlying the various Katrina-related classjactions5 that the plaintiffs allege have suspended prescription on their respective claims.
A
Louisiana Citizens Property Insurance Company is the insurer of last resort. It is a non-profit corporation created by the legislature to provide certain insurance programs which “function exclusively as residual market mechanisms to provide essential property insurance for residential and commercial property in the State, solely for applicants who are in good faith entitled, but are unable, to procure insurance through the voluntary market.” La. R.S. 22:2291. The legislature intended Citizens’ income to be exempt from federal taxation so that the corporation would have the “maximum financial resources to pay claims following a catastrophic hurricane.” Id.
Citizens is operated by a board of directors, and its employees are treated similarly to state employees in that they are prohibited from participating in political activity. See La. R.S. 22:2293 A, B(3). Citizens is also treated as a public entity for the purposes of the “Open Meetings Law,” see La. R.S. 42:11 et seq., and the “Public Records Law,” see La. R.S. 44:1-41. See La. R.S. 22:2293 D(l). Funding for Citizens, however, does not come from state funds, and the debts and liabilities of the corporation are not considered to be obligations of the state. See La. R.S. 22:2193 B(l).
lfiIn the context of these first-party claims, Citizens had ready access in its own records of the identities of its policyholders who likely were affected by the storm’s ravages.
B
On July 29, 2009,[5] Melanie Ansardi first filed suit against Citizens. Ms. Ansardi’s claim initially was cumulated along with *465 several hundred other claims as part of a mass joinder lawsuit involving 183 St. Bernard Parish property owners, each of whom claimed to have sustained wind related damages to their respective properties during Hurricane Katrina. Further, the plaintiffs claimed that they notified Citizens of their respective wind losses, but that Citizens failed to initiate adjustment of the loss within the time set out by La. R.S. 22:1892. Each of the plaintiffs also claimed that Citizens, after it started adjusting their losses, failed to tender any undisputed amounts within the time set out in La. R.S. 22:1973 after having received satisfactory proofs of loss. The plaintiffs, accordingly, brought suit against Citizens seeking all amounts due under their respective policies, penalties and attorney’s fees for violating La. R.S. 22:1892 and La. R.S. 22:1973, as well as legal interest and costs. The July 29, 2009 petition also indicates that the named plaintiffs are putative class members of the class described in Orrill v. AIG, Inc., 09-0888 (La.App. 4 Cir. 4/21/10), 38 So.3d 457, units denied, 09-2807, 10J0945,7 10-1117 (La.9/17/10), 45 So.3d 1035, 1036, but that they elected to opt out of the Orrill matter by mailing in the requisite opt out forms.[6]
On August 25, 2009, the plaintiffs reached a consent judgment with Citizens that specifically called for each of the named plaintiffs to file an individual lawsuit. The consent judgment, however, provided that each of the subsequent individual lawsuits would retain the filing date of the original lawsuit, or amendment thereto.
Accordingly, Ms. Ansardi re-filed her claim for damages against Citizens on September 17, 2009, and re-asserted those claims that she first leveled against Citizens in the initial, mass joinder suit.[7] Citizens answered Ms. Ansardi’s suit on October 23, 2009, and filed an exception of prescription on June 7, 2011. Citizens argued in its exception, as it does presently, that the Louisiana Supreme Court’s opinion in Taranto v. Louisiana Citizens Prop. Ins. Corp., 10-0105 (La.3/15/11), 62 So.3d 721, established an inviolable date-May 31, 2009-by which time all Hurricane Katrina related claims for damages had to be filed. Citizens, accordingly, argued that Ms. An-sardi’s claim for damages had prescribed because it was filed nearly two months after May 31, 2009.
Ms. Ansardi opposed Citizens’ exception, cited to La. C.C.P. art. 596, and argued to the district court that her claim had not prescribed because she was a putative class member of several state and federal class-action lawsuits concerning Citizens, its adjustment practices, and Hurricane Katrina-related losses. The 18district court took the matter under advisement after conducting an evidentiary hearing on Citizens’ exception. The district court signed a judgment on November 14, 2011, that granted Citizens’ exception and dismissed plaintiffs claims.[8] Ms. Ansardi timely sought an appeal with this Court.
C
On May 20, 2011, Eric Johnson, Nichelle Johnson, Allen Johnson, Deborah Henville, Marguerite Dotson, Jason Georgusis, and *466 Ruth Umfrey, filed suit against Citizens in St. Bernard Parish. The plaintiffs claimed that they owned immovable property in St. Bernard Parish, that their individual properties had sustained wind damage as a result of Hurricane Katrina, and that the contents of their respective homes had likewise sustained damages. Further, the plaintiffs also alleged that each of them was forced to evacuate St. Bernard Parish pursuant to an evacuation order issued by the parish government. The plaintiffs, therefore, also alleged that the evacuation forced them to incur additional expenses for food and alternative temporary living arrangements. The plaintiffs alleged that Citizens failed to tender the total amounts due under their respective policies, and that they are, therefore, entitled to collect all amounts due under the policy, legal interest, and costs. The plaintiffs did not make a claim for penalties and fees pursuant to La. R.S. 22:1892 and La. R.S. 22:1973.
13Citizens responded to the Johnson suit on August 16, 2011, with exceptions of improper cumulation of actions, res judica-ta, and prescription.[9] Citizens argued in its exception of prescription, as it does presently, that the Louisiana Supreme Court’s opinion in Taranto, supra, established an inviolable date — May 31, 2009— by which time all Hurricane Katrina related claims for damages had to be filed. Citizens, accordingly, argued that the Johnson claims were prescribed on the face of the petition because they were filed nearly two years after May 81, 2009.
Like Ms. Ansardi, the Johnson plaintiffs disputed Citizens’ assertion that Taranto established a firm prescriptive date for Katrina-related claims filed against Citizens. Like Ms. Ansardi, the Johnson plaintiffs also cited La. C.C.P. art. 596 and argued that their claims had not prescribed because they were putative class members of several state and federal class-action lawsuits concerning Citizens, its adjustment practices, and Hurricane Katrina-related losses. The parties argued the merits of Citizens’ exceptions on September 9, 2011. After listening to the parties’ arguments, the district court took Citizens’ exception of prescription under advisement and, on November 17, 2011, signed a judgment granting Citizens’ exception. The plaintiffs timely moved to devolutively appeal the district court’s November 17, 2011 judgment on Citizens’ exception of prescription.
IiqD
In this section we discuss briefly the facts underlying the various Katrina-related class-actions that the plaintiffs allege have suspended prescription on their respective claims.[10] For the sake of completeness of our review, we separate the class-actions into three categories: (1) those filed and pending in a Louisiana court, (2) those filed in a Louisiana court but removed to and pending in the federal court, and (3) those filed in and pending in federal court. We emphasize, however, that as a result of the Quinn decision, even a class-action that was initially filed in a Louisiana court and later removed to, and *467 is now pending in, a federal court has no effect on the tolling of the prescriptive period.[11]
1
The earliest Katrina-related class-action that named Citizens as a defendant was Orrill v. Louisiana Citizens Fair Plan Prop. Ins. Carp., Orleans Parish Civil District Court, Docket No. 2005-11720, which was filed on October 2, 2005. The Orrill class was certified on June 6, 2008, and defined as:
All persons insured by or through the Louisiana Citizens’ [sic] Fair Plan, and/or the Coastal Plan, underwritten, administered and/or serviced by any one or more of the named defendants, who sustained damages as a result of Hurricane Katrina to their covered personal and/or rental property and/or real property and improvements who have been unable to receive prompt adjustment within thirty days after notification of their loss, and/or who did not receive a written offer to settle within thirty days after receipt of satisfactory proof of loss of that claim, as provided by their policies of insurance.
| nOn October 1, 2008, the respective counsel for the Orrill plaintiffs and for Citizens filed a joint motion to preliminarily approve a settlement between the parties, which, nevertheless, expanded the certification and provided notice. The first notice of the Orrill class certification was approved on October 1, 2008. Several class members, however, objected to the settlement and appealed the matter to this Court. Orrill, 09-0888, 38 So.3d 457, writs denied, 09-2807, 10-0945, 10-1117, 45 So.3d 1035, 1036. This Court found that the class notice did not comply with the requirements of due process and that the district court could not expand the class to include claims arising out of Hurricane Rita, or Katrina-related claims for statutory damages pursuant to former La. R.S. 22:658 A(3). This Court, accordingly, reversed the district court’s judgment approving the settlement, vacated the settlement proposal, and remanded the matter to the district court. Id. On February 17, 2011, Citizens filed a motion to decertify the class-action in the district court. The district court denied the motion, and Citizens sought review from this Court. This Court affirmed the district court’s judgment. Orrill v. Louisiana Citizens Fair Plan, 11-1541 (La.App. 4 Cir. 6/13/12), 96 So.3d 647, writ denied, 12-1643 (La.12/14/12), 104 So.3d 434 (Mem).
The plaintiffs also rely upon Oubre v. Louisiana Citizens Fair Plan, 24th Judicial District Court, Docket No. 625-567, which was filed on November 18, 2005. The district court granted class certification on July 11, 2006, and rendered an amended judgment on July 17, 2006, which defined the class accordingly:
All present or past insureds of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, | ^hereinafter referred to as “LCPIC”, who, on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.
Citizens appealed the district court’s amended class certification, and the Louisiana Fifth Circuit Court of Appeal affirmed. Oubre v. Louisiana Citizens Fair Plan, 07-66 (La.App. 5 Cir. 5/29/07), 961 *468 So.2d 504, writ denied, 07-1329 (La.9/28/07), 964 So.2d 368.
Ms. Ansardi additionally relies upon Buxton v. Louisiana Citizens Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2006-08341, which was filed on August 25, 2006. The Buxton plaintiffs sought to define the class as:
all insured ... who, on or after August 29, 2005, provided notification of loss, ... whose loss adjustment was not initiated within thirty days after notification of loss, ... whose claims were not followed by a written offer of settlement within thirty days after receipt of satisfactory proof of loss and or whose claims were insufficiently paid.
The district court denied certification of the proposed class on August 9, 2007. The named plaintiff sought interlocutory review, but this Court denied her writ application. Buxton v. Louisiana Citizens Property Insurance Corp., unpub., 07-1176 (La.App. 4 Cir. 9/10/07).
Ms. Ansardi also argues that Chalona v. Louisiana Citizens Prop. Ins. Corp., filed on August 25, 2006, in the 34th Judicial District Court, also served to suspend prescription on her claims. The Chalona class was certified, but the definition was restricted on January 25, 2008, to include:
All present or past insureds of Louisiana LCPIC Property Insurance Corporation a/k/a LOUISIANA LCPIC FAIR PLAN, hereinafter referred to as “LCPIC”, who, on or after August 29, 2005, provided notification of loss resulting from Hurricane Katrina and/or 11sRita to LCPIC, notwithstanding whether loss adjustment was initiated within thirty (30) days after notification of loss, whose claims were not followed by a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss.
Thus, the Chalona class restriction encompassed the putative Buxton class definition. The class restriction was published on April 24, 2008. This Court affirmed both the class certification and definition in Chalona v. Louisiana Citizens Prop. Ins. Corp., 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494.
The Johnson plaintiffs rely upon a further Katrina-related class-action that, like Buxton and Chalona, was also filed on August 25, 2006. Specifically, Christenberry v. Louisiana Citizens Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2006-0819, purports to encompass the following class:
All immovable property owners in the State of Louisiana who were issued a property, business and/or commercial insurance policy by the named defendant and whose policy was in full force and effect at the time of the covered event and who made a claim for benefits under said policy to address the physical damages to their property which was damaged as a result of Hurricane Katrina and its aftermath. In addition, each class member has been determined by the defendant to have a compensable loss and has either been paid or in the process of being paid by the defendant for the compensable loss of the property. The loss payment to each class member included a below market unit pricing on numerous items and non-payment of industry standard items.
At the time of this matter’s submission to us, the district court in Christenberry had yet to rule on class certification.
The Johnson plaintiffs rely upon one additional Katrina-related Louisiana district court class-action involving Citizens— Press v. Louisiana Citizens Fair Plan Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2006-5530,114which was filed on June 27, 2006. The district *469 court certified a class on August 4, 2008, consisting of:
Persons who had a Louisiana Citizens Property Insurance Property Corporation homeowners’ insurance policy at the time of Hurricane Katrina and/or Rita; suffered covered damage to structures insured by Citizens homeowners’ insurance policy as a result of Hurricane Katrina and/or Rita; Citizens’s adjustment identified three or more trades involved in the repairs and payment was based on Citizens’s adjustment of damages; and the payment did not include 20% GCOP [“General Contractor Overhead and Profit”].
There is no indication in the record that the requisite La. C.C.P. art. 592 B(l) notice was promulgated. Citizens appealed the district court’s class certification, and this Court affirmed the ruling. Press v. Louisiana Citizens Fair Plan Prop. Ins. Corp., 08-1313, 08-1314 (La.App. 4 Cir. 4/22/09), 12 So.3d 392.
2
The various parties further assert that two Katrina-related class-action lawsuits from federal district court in New Orleans also serve to suspend prescription on their claims against Citizens. Specifically, Ms. Ansardi and the Johnson plaintiffs both rely upon State v. AAA Ins. Co., Docket No. 2007-8970, which was originally filed in Orleans Parish Civil District Court on August 23, 2007, but subsequently removed to the United States District Court for the Eastern District of Louisiana, Docket No. 07-5528. The parties refer to this matter colloquially as the “Road Home ” class. The putative class is defined to include:
All current and former citizens of the State of Louisiana who have applied for and received or will receive funds through the Road Home Program, and who have executed or will execute a subrogation or assignment agreement in favor of the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient’s residence as a result of any natural or man-made occurrence l1sassociated with Hurricanes Katrina and/or Rita under any policy of insurance, as plead herein, and for which the State has been or will be granted or be entitled to recover as repayment or reimbursement of funds provided to any such recipient through the Road Home Program.
Class certification, however, is still pending in the Road Home lawsuit.
3
Finally, Ms. Ansardi also argues that The Insurance Master Consolidated Class Action Complaint, or “Master Complaint," in the matter of In Re: Katrina Canal Breaches Consolidated Litigation, United States District Court for the Eastern District of Louisiana, Docket No. 05-4182, also serves to suspend prescription on her claims against Citizens. The Master Complaint was filed on March 15, 2007, against numerous insurers, including Citizens, on behalf of three sub-classes: homeowner policyholders, commercial insurance policyholders, and rental insurance policyholders. The Master Complaint sought to define the homeowner policy class accordingly: “all persons who owned property within the State of Louisiana which property was damaged or destroyed by or as a proximate result of winds associated with Hurricane Katrina, and who at the time of the loss had in effect an All-Risk homeowner’s insurance policy issued by one of the Defendants.” All class allegations were dismissed on June 16, 2009, but notice was neither sent nor published.
II
We now summarize the district court’s reasons for judgment as well as the arguments put forward by the parties.
*470 li&A-
Two judgments from two divisions of the 34th Judicial District Court are before us today. Because the judgments are accompanied by written reasons, we have the benefit of the thoughtful reasoning of the district court judges.
The trial judge presiding over Ms. An-sardi’s lawsuit concluded that none of her claims were included within any of the Katrina-related class-action lawsuits that she relied upon to rebut Citizens’ prescription argument. The trial judge further concluded that Ms. Ansardi cannot rely upon the “Road Home” class because she essentially opted out of the putative class by filing her own individual lawsuit prior to a determination on class status. The trial judge also concluded that, even if Ms. Ansardi’s claims were included within the putative “Master Complaint” class, she could not rely upon this federal action to suspend prescription because Louisiana does not allow for cross-jurisdictional tolling. The trial judge in Johnson granted Citizens’ exception after, likewise, concluding that the Johnson plaintiffs’ claims were not suspended by any of the Katrina-related class-action lawsuits relied upon by the plaintiffs because their claims were not included within any of the aforementioned lawsuits.
B
On appeal, Ms. Ansardi argues that this Court should reverse the district court’s judgment granting Citizens’ exception of prescription because the Supreme Court’s Taranto opinion does not establish an inflexible cut-off date for all Katrina-related claims against Citizens. Ms. Ansardi also argues that the period Inapplicable to her claim had been suspended by operation of La. C.C.P. art. 596 and by virtue of several class-action Katrina-related lawsuits of which Ms. Ansardi alleges that she is a putative member. Specifically, Ms. Ansar-di asserts that her claim was suspended by the following class-action lawsuits: 1) Buxton v. Louisiana Citizens Prop. Ins. Corp., Orleans Parish Civil District Court, Docket' No. 2006-08341; 2) The Insurance Master Consolidated Class Action Complaint in the matter of In Re: Katrina Canal Breaches Consolidated Litigation, United States District Court for the Eastern District of Louisiana, Docket No 05-4182; 3) Chalona v. Louisiana Citizens Prop. Ins. Corp., 34th Judicial District Court, Docket No. 107,125; 4) Orrill v. Louisiana Citizens Fair Plan Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2005-11720; 5) State v. AAA, Orleans Parish Civil District Court, Docket No. 2007-8970; E.D.La. No. 07-5528; and 6) Oubre v. Louisiana Citizens Prop. Ins. Corp., 24th Judicial District Court, Docket No. 625-567. Additionally, Ms. Ansardi argues that the filing of the present suit did not serve to act as an opt out of the foregoing class-action lawsuit, and asks us to overrule our holding in Duckworth, supra, which held otherwise, and has, as noted, been subsequently overruled by the Supreme Court.
C
Like Ms. Ansardi, the Johnson plaintiffs argue that the district court erred in granting Citizens’ exception of prescription in their case because the prescriptive period applicable to their claims had been suspended by operation of La. C.C.P. art. 596. Specifically, the Johnson plaintiffs assert that the following class-action |ismatters suspended prescription on their claims: 1) Christenberry v. Louisiana Citizens Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2006-8819; 2) Press v. Louisiana Citizens Fair Plan Prop. Ins. Corp., Orleans Parish Civil District Court, Docket No. 2006-5530; 3) Oubre v. Louisiana Citizens Prop. Ins. Corp., 24th J.D.C., *471 Docket No. 625-567; 4) Orrill v. AIG, Inc., Orleans Parish Civil District Court, Docket No. 2005-11720; 5) State v. AAA, Orleans Parish Civil District Court, Docket No. 2007-8970; E.D.La. No. 07-5528; and 6) State v. AAA, Orleans Parish Civil District Court, Docket No. 2007-8970. Additionally, the Johnson plaintiffs ask us to reverse our holding in Duckworth, supra.
D
In the present matter, Citizens first insists that we interpret Taranto as establishing a definitive cut-off date for the filing of all Katrina-related claims made by Citizens’ policyholders. Citizens also argues that the underlying exceptions should be affirmed because the district court’s respective rulings are based on a proper interpretation of La. C.C.P. art. 596. Citizens further asserts that the exceptions were properly granted because the plaintiffs failed to establish that each of the plaintiffs was a putative member in a class-action lawsuit that suspended prescription. Citizens argues additionally that the plaintiffs effectively opted out of several of the various Katrina-related class-actions by virtue of their filing individual lawsuits prior to a determination of class status. Citizens finally argues that the plaintiffs cannot rely upon any Katrina-related class-action lawsuits |1flfiled in the federal district courts because Louisiana does not recognize what Citizens refers to as cross-jurisdictional tolling.
Ill
In this Part, we turn to address general legal precepts governing an analysis of the issues presented by these consolidated appeals. We begin with a review of the general law governing the concept of prescription and then summarily review the well-established decisional rules applicable to exceptions of prescription.
A
“Liberative prescription is a mode of barring of actions as a result of inaction for a period of time.” La. Civil Code art. 3447. Louisiana law provides that an obligee’s right to assert a cause of action may be lost with the passage of time by the operation of prescription. See Taranto, 10-0105, p. 5, 62 So.3d at 726. The jurisprudence explains that the “fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof.” Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040, 1045 (La.1985). Prescriptive statutes “are designed to protect him against lack of notification of a formal claim within the prescriptive period,” and importantly for the purposes of this discussion, “not against pleading mistakes that his opponent makes in filing the formal claim within the period.” Id.
| ^Prescription may also be interrupted or suspended.[12] A prescriptive period is interrupted “when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue.” La. Civil Code art. 3462. If, on the other hand, an “action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.” Id. An action commenced in a court of competent jurisdiction and venue, or with service of process within the prescriptive *472 period, continues to interrupt prescription for as long as the suit remains pending. See La. Civil Code art. 3463. If, however, a plaintiff abandons or voluntarily dismisses the action at any time, either before the defendant has made an appearance of record, or fails to prosecute the suit at trial, then interruption is considered never to have occurred. Id. Significantly, La. Civil Code art. 3466 provides that if “prescription is interrupted, the time that has run is not counted.” Rather, prescription “commences to run anew from the last day of interruption.” Id.
The Civil Code also provides for the suspension of prescription between certain parties who have unique and protected relationships. See La. Civil Code art. 3469; see also La. Prac. Civ. Pretrial § 6:94 (2011-2012 ed.). Prescription, accordingly, is suspended as between: 1) spouses during marriage; 2) parents and children during minority; 3) tutors and minors during tutorship; 4) curators and interdicts during interdiction; 5) caretakers (i.e., a person legally obligated to | ⅞, provide or secure adequate care for a child, including a tutor, grandson or legal custodian); and 6) minors during minority. Like the effects accorded to an interrupted prescriptive period, when a prescriptive period is suspended “the period of suspension is not counted toward accrual of prescription.” La. Civil Code art. 3472. Suspension differs from interruption, though, because the prescriptive clock is not reset upon the removal of the suspending factor. “Prescription commences to run again upon the termination of the period of suspension.” Id.
B
We summarize now the well-established decisional rules applicable to exceptions of prescription.
“Prescription must be pleaded. Courts may not supply a plea of prescription.” La. Civil Code art. 3452. See also La. C.C.P. art. 927 B (“The court may not supply the objection of prescription, which shall be specially pleaded.”). Prescription is an objection raised by peremptory exception. See La. C.C.P. art. 927 A(l). Like other peremptory exceptions, a defendant may raise the exception of prescription in the trial court at any time prior to the matter’s submission after trial. La. C.C.P. arts. 927 and 928(B). La. C.C.P. art. 929 provides that when a peremptory exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. See Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992). If prescription is evident on the face of the pleadings, however, the burden ^shifts to the plaintiff to show that the action has not prescribed. See Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La.1993).
The district court is not bound to accept as true the allegations of plaintiffs petition in its trial of the peremptory exception. See Bowers v. Orleans Parish School Bd., 95-2530 (La.App. 4 Cir. 5/29/96), 694 So.2d 967, 972. Evidence may be introduced at the trial of all peremptory exceptions, except the objection of no cause of action. See La. C.C.P. art. 931. When evidence is introduced and evaluated at the trial of a peremptory exception, an appellate court must review the entire record to determine whether the district court manifestly erred with its factual conclusions. See Davis v. Hibernia Nat. Bank, 98-1164 (La.App. 4 Cir. 2/24/99), 732 So.2d 61, 63. The standard of review of a district court’s finding of facts supporting prescription is that the appel *473 late court should not disturb the finding of the district court unless it is clearly wrong. See In re Medical Review Proceedings of Ivon, 01-1296, p. 5 (La.App. 4 Cir. 3/13/02), 813 So.2d 532, 536.
Importantly for the purposes of this matter, even when the trial court sustains the peremptory exception of prescription, if “the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the final judgment sustaining the exception shall order such amendment within the delay allowed by the court.” La. C.C.P. art. 934; see also, Quinn, 12-0152, p. 10, — So.3d at -, 2012 WL 5374255, at *10 (sustaining the exception of prescription and remanding to district court to allow the Quinns to allege facts to show that their claims are not prescribed).
12,-jThe standard controlling our review of a peremptory exception of prescription requires that this Court strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. See Proctor’s Landing Property Owners Ass’n, Inc. v. Leopold, 11-0668, p. 10 (La.App. 4 Cir. 1/30/12), 83 So.3d 1199, 1206; Bosarge v. DePaul/Tulane Behavioral Health Center, 09-1345, p. 2 (La.App. 4 Cir. 5/19/10), 39 So.3d 790, 792.
IV
Keeping these prescription-related precepts before us, we now address the manner in which a Louisiana class-action lawsuit can render, through the application of suspension principles, a subsequently filed individual Louisiana lawsuit timely. We look first to the historical and traditional approach to the matter and the rule that emerged. Then we examine the legislative modification of that rule applicable to class-action lawsuits pending in Louisiana courts.
A
In American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the United States Supreme Court held that the filing of a class-action suit “suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.”[13] Thus, the Court made clear that statutes of limitations, or prescription statutes, could be tolled by timely filed class-action lawsuits.
124Later, the Louisiana Supreme Court ruled that “since the class action is brought on behalf of all members of the class, its filing interrupts prescription as to the claims of all members of the class, whether they are noticed before or after the prescriptive delay has terminated.” Williams v. State, 350 So.2d 131, 137 (La.1977). Thus, the Supreme Court decided that a timely filed class-action lawsuit, like any other lawsuit under La. Civil Code art. 3462, interrupted the prescriptive period.
B
The legislature, however, modified this general rule that a class-action lawsuit interrupted the prescriptive period of class-action lawsuits pending in Louisiana courts. La. C.C.P. art. 596 is “a special provision that prevents prescription from accruing against the claims of members of a putative class action until the propriety of the class action or the member’s participation in the action is determined.” 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Pro *474 cedure § 4.12 (1999), cited in Galjour v. Bank One Equity Investors-Bidco, Inc., 05-1360, p. 5 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 721.
Within the realm of class-action lawsuits, Article 596 provides a different tolling rule from the rule announced in Williams, which had been applicable to any class-action lawsuit. Article 596 provides that a class-action lawsuit pending in a Louisiana court no longer interrupts the prescriptive period, but suspends the prescriptive period. Specifically, La. C.C.P. art. 596 provides:
A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf |Mof a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
B. The time periods in Subpara-graphs (A)(2) and (3) of this Article commence upon the expiration of the delay for taking an appeal if there is no appeal, or when an appeal becomes final and definitive. The notice required by Subparagraphs (A)(2) and (3) of this Article shall contain a statement of the delay periods provided herein, (emphasis added)
Thus, to the extent that an individual plaintiff relies upon a class-action lawsuit pending in a Louisiana court, a district court is to decide whether the individual lawsuit is timely by applying the specific suspension rules set out in Article 596. But, as we discuss in the following section, if the class-action lawsuit was one pending in federal court, then Article 596 suspension does not apply.
C
As noted, the Supreme Court recently addressed the issue of cross-jurisdictional tolling in Quinn and held specifically that the provisions of Article 596 “do not extend to suspend prescription on claims asserted in a putative class action filed in federal court.” 12-0152, p. 1, — So.3d at -, 2012 WL 5374255, ⅞⅛/;1. In light of its importance to the issues at hand, we will now discuss Quinn in greater detail.
Specifically, the Quinn plaintiffs owned residential property in Harvey, Louisiana, which was rendered uninhabitable because of wind and rain damage sustained during Hurricane Katrina. The Quinns submitted a claim to Citizens, their insurer. More than thirty days elapsed after the Quinns’ satisfactory proof of loss was submitted to Citizens, but Citizens did not render payment under the terms of the policy. The Quinns filed suit against Citizens in the 24th Judicial District Court for the Parish of Jefferson on October 28, 2009, and requested, in their petition, damages for the underpayment of amounts due. The Quinns’ petition also alleged that Citizens *475 was a recently dismissed defendant in a class action claim lodged in the United States District Court for the Eastern District of Louisiana, and that the plaintiffs now wished to pursue their individual claims.
In response, Citizens filed an exception of prescription wherein they asserted that the Quinns had been putative members of Buxton and Chalona but that their claims had been removed from those classes by virtue of a class restriction issued on April 24, 2008. Citizens, thus, argued that the Quinns’ claims were prescribed because May 31, 2009, was the latest date on which the Quinns could have asserted their first-party claims. Citizens also asserted that the Quinns opted-out of all pending class actions by virtue of their filing an individual lawsuit. Citing to Article 596, the Quinns countered that they were putative members of the Orrill, Oubre, Road Home, and Master Complaint classes and that prescription on their |27claims was suspended by virtue of the fact that the Oubre, Orrill, and Road Home actions were still pending, and that the Buxton and Master Complaint actions had been dismissed without notice to the Quinns. The Quinns further disputed Citizens’ contention that their filing of an individual suit opted them out of the suspension of prescription provided by Article 596. The district court denied Citizens’ exception, and Citizens then sought supervisory review from the Fifth Circuit, which denied writs. Citizens then applied for certiorari with the Supreme Court, who granted Citizens’ writ application. The Supreme Court subsequently consolidated Quinn with Duckworth and issued opinions in both matters simultaneously.
The Supreme Court framed its inquiry in the following manner: “(1) whether the suspension of prescription provided for in La. C.C.P. art. 596 extends to a putative class member who files an individual claim after a ruling on the class certification issue and, if so, (2) whether La. C.C.P. art. 596 suspends prescription when the putative class action is filed in another jurisdiction.” Quinn, 12-0152, p. 1, — So.3d at -, 2012 WL 5374255, at *1.
The Supreme Court answered the first question affirmatively, by way of reference to its Duckworth opinion, which we discuss in Part IV, post. With respect to the second question, the Supreme Court first observed that no evidence was introduced at the hearing on Citizens’ exception, and, thus, the exception had to be decided solely on the basis of the facts pled in the Quinns’ petition. Although the Quinns’ petition was filed several years after September 4, 2007, the plaintiffs’ [2Spetition nevertheless referred obliquely to a then recently dismissed class action proceeding filed in federal court wherein Citizens had been a defendant. The Supreme Court then addressed whether a class action proceeding filed in a different jurisdiction could trigger Article 596 suspension of prescription.
The Supreme Court grounded its analysis on the plain words of Article 596 with reference to other articles in the Code of Civil Procedure regarding class action lawsuits. The Supreme Court first observed that Article 596 contains no express language limiting its effects to Louisiana class action lawsuits. However, the Supreme Court then went on to observe that Article 596’s “operative provisions are specifically tied to several unique features of Louisiana class action procedure.” Quinn, 12-0152, p. 11, — So.3d at-, 2012 WL 5374255, at *6. Specifically, the Supreme Court observed that La. C.C.P. art. 596 A(l) indicates that prescription begins to run anew thirty days from the submission of an election form seeking to be excluded from a certified class, a practice that is *476 particular to Louisiana. Similarly, the Supreme Court also observed that La. C.C.P. art. 596 A(3) provides that prescription may also begin to run anew thirty days after notice that a demand for class relief has been stricken, another provision unique to Louisiana.
The Supreme Court likewise noted that the notice provisions, found in Article 596 A(2) and (3) and which link the recommencing of prescription to the issuance of notice, is particular to Louisiana. Additionally, the Supreme Court observed that an Article 596 A(2) motion to strike a demand for class relief is [ 23particular to Louisiana, as are the contents of the notice provided for in Article 596 A(2) and (3). Thus, the Supreme Court concluded: “By tying the operative provisions of La. C.C.P. art. 596 to unique aspects of Louisiana class action procedure, the legislature has expressed an intent that suspension of prescription under La. C.C.P. art. 596 can apply only to putative class actions filed in Louisiana state courts.” Quinn, 12-0152, p. 13, — So.3d at -, 2012 WL 5374255, at *7. In light of Quinn’s specific holding, we are constrained to find that the plaintiffs in these consolidated actions cannot rely upon federal class action proceedings, such as the Road Home or Master Complaint matters, to suspend prescription on their first-party Louisiana claims against Citizens.
V
Given that its influence looms so large over the present proceeding, we now discuss in some detail Taranto v. Louisiana Citizens Prop. Ins. Corp., 10-0105 (La.3/15/11), 62 So.3d 721. We first emphasize that Taranto authoritatively indicates that any class-action lawsuit relied upon by the plaintiffs in these cases must have been filed no later than September 4, 2007. Id., 10-0105, p. 15, 62 So.3d at 732.[14] Thus, unless the district court can find as a fact that the class-action lawsuit upon which the plaintiff relies for the suspension or interruption of the prescriptive period was filed by that date, such class-action cannot be the basis for either suspension or interruption.
| spin the following sections, we first describe the Taranto decision for its important instructional value, and then address why we reject the contention of Citizens that Taranto provides that May 31, 2009, is a definitive prescription date for all Katrina-related claims.
A
The Taranto plaintiffs were New Orleans property owners whose homes had been insured by Citizens at the time they suffered damage as a result of Hurricane Katrina. The Taranto plaintiffs filed suit on June 27, 2008, against Citizens, arguing that their property was covered by Citizens; their property was completely destroyed on August 29, 2005, as a result of Hurricane Katrina; they presented proof of loss and made demand for payment; and Citizens refused to pay the policy limits. The plaintiffs, accordingly, sought payment of their policy limits and damages.
Citizens responded by filing an exception of prescription, arguing that the Tar-anto suit was not filed within one year of the loss or within the extended period of time established by Acts 2006, nos. 739 and 802. The district court granted Citizens’ exception, and the plaintiffs appealed to *477 this Court. See Taranto v. Louisiana Citizens Prop. Ins. Co., 09-0413 (La.App. 4 Cir. 12/16/09), 28 So.3d 543. On appeal, this Court reversed the district court and held that the timely filing of two class-actions against Citizens in which the plaintiffs were putative members — Buxton v. Louisiana Citizens Prop. Ins. Co., 06-8341, Civil District Court, Orleans Parish; and Chalona v. Louisiana Citizens Prop. Ins. Co., 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494 — had interrupted the applicable prescriptive period.
Citizens sought review from the Louisiana Supreme Court and argued that the Taranto plaintiffs’ suit was untimely because suspension of prescription statutes, like La. C.C.P. art. 596, do not apply to the one-year claims limitation period found in its policy with the plaintiffs. Citizens asserted, rather, that the one-year policy period was purely contractual, and, thus, immune from interruption or suspension. The Supreme Court granted certiorari and framed the issue accordingly: “whether the Plaintiffs’ lawsuit had prescribed when it was filed after the expiration of the suit limitation period provided in the policy of insurance and after the expiration of the extended deadline enacted by the Louisiana Legislature despite other pending class actions against LCPIC involving Hurricane Katrina claims, which purportedly included Plaintiffs as putative class members.” Taranto, 10-0105, pp. 4-5, 62 So.3d at 725-726. The Supreme Court, therefore, was faced with two interrelated issues: 1) were the Taranto plaintiffs’ claims timely; and, if so, 2) were suspension of prescription principles applicable to a claims limitation period set out in an insurance policy?
In analyzing the issue before it, the Court first examined the law on exceptions of prescription and statutes of limitation. The Court next concluded that the plaintiffs’ suit was subject to the one-year contractual provision set in the policy instead of the ten-year limitation set out in La. Civil Code art. 3499. The Court observed that the plaintiffs’ claims were not filed within the one-year 132limitation period set out in their policy -with Citizens or within the extended limitations period established by Acts 2006, nos. 739 and 802.
The Supreme Court then noted that prescription may be suspended by the timely filing of a class-action suit, examined La. C.C.P. art. 596, and discussed the relevant interpretive jurisprudence. Significantly, the Court observed that two class-actions suits — Buxton and Chalona — would serve to suspend the running of prescription of the plaintiffs’ claims. The Court examined Buxton and Chalona; observed that the Taranto plaintiffs were putative class members of both suits when they were initially filed; and concluded that as soon as “the Buxton class certification was denied [on August 9, 2007], and the Chalona class was restricted to exclude plaintiffs whose claims were insufficiently paid,” the Taranto plaintiffs’ claims were no longer represented in the class-actions. Taranto, 10-0105, p. 14, 62 So.3d at 731. The Supreme Court then concluded that the prescriptive period that was suspended upon the filing of the Buxton and Chalona class-actions began to run again, in accordance with La. C.C.P. art. 596, thirty days after the April 24, 2008, publication of notice of the Chalona class restriction.
The Supreme Court calculated the remaining period on the plaintiffs’ claims in the following manner. First, the Supreme Court observed that when the Buxton and Chalona petitions were filed on August 25, 2006, Acts 2006, nos. 739 and 802 were still in effect. These acts gave the plaintiffs until September 1, 2007, to bring a claim against Citizens. Because La. C.C.P. art. 596 suspends the operation of prescription, *478 the Supreme Court then calculated the time remaining between [.^August 25, 2006 and September 1, 2007, and concluded that Buxton and Chalona resulted in a suspension of one year and seven days. The district court denied the Buxton class on August 9, 2007. On the other hand, the Chalona restriction notice was published on April 24, 2008. Pursuant to La. C.C.P. art. 596, prescription began to run anew on May 24, 2008. The Supreme Court then concluded that the one year, seven day suspension period ended on May 31, 2009, and that the Taranto plaintiffs’ claims were timely.
Despite this finding, however, the Supreme Court still had to address the issue of whether the one-year limitation period found in the Taranto plaintiffs’ policy with Citizens was subject to suspension of prescription principles. Although its reasoning is not germane to the issue before us, we note that the Supreme Court, after a thorough analysis, concluded that “the contractual stipulation in the LCPIC policy is actually one imposed by law, and not contract, and thus the laws with respect to interruption and suspension apply, including LSA-C.C.P. art. 596.” Taranto, 10-0105, p. 19, 62 So.3d at 734.
B
In this section we discuss, while declining to adopt, Citizens’ argument that the Supreme Court’s Taranto opinion established a definitive cut-off date for all Katrina-related claims against Citizens. We decline to interpret Taranto to stand for this proposition. Nowhere in the body of the opinion does the Supreme Court even suggest that May 31, 2009, is now to be construed as the final cut-off date for all Katrina-related claims. Our conclusion is based on several observations. First, |34as previously stated, we take judicial notice of the fact that May 31, 2009, was a Sunday and thus a legal holiday.[15] Second, the Supreme Court did not conclude, out of hand, that other timely filed Katrina-related class-action suits could not serve to suspend prescription on other individual lawsuits. Rather, it is clear that the Supreme Court’s Taranto suspension analysis is limited to Buxton and Chalona because those are the only two class-actions that were claimed to have suspended the running of prescription on the plaintiffs’ claims. We note, at this juncture, that the Supreme Court’s suspension analysis effectively mirrored, and thus affirmed, this Court’s suspension analysis in both Taranto, supra, and Pitts v. Louisiana Citizens Prop. Ins. Corp., 08-1024 (La.App. 4 Cir. 1/7/09), 4 So.3d 107. In Taranto and Pitts, this Court did not construe May 31, 2009 to be a definitive cut-off date for all Katrina-related claims. If this Court’s Taranto and Pitts opinions cannot be read to establish such a date, then the Supreme Court’s Taranto opinion, which bases its suspension analysis on this Court’s analysis, cannot be so interpreted either.
Third, the language used by the Supreme Court in Taranto belies Citizens’ claims. For example, at the outset of its opinion, it is clear that the Supreme Court is analyzing the plaintiffs’ claims, not setting out a bright-line rule:
We granted this writ application to determine whether the Plaintiffs’ lawsuit, seeking damages from the Louisiana Citizens Property Insurance Corporation, that was filed nearly three years after Hurricane Katrina, is prescribed. The Fourth Circuit Court of Appeal held that the prescriptive period was interrupted by a timely filed class action petition against the insurer, which included the Plaintiffs as putative class *479 members. Taranto v. Louisiana Citizens Property Ins. Corp., 09-0413 (La. App. 4 Cir. 12/16/09), 28 So.3d 543. For the reasons that follow, we hold that despite the language of the LCPIC insurance policy, which mandated a one year suit limitation, the Plaintiffs’ lawsuit was timely filed because prescription was suspended upon the timely filing of the pending class action suits, which included the Plaintiffs as putative class members.
Taranto, 10-0105, pp. 1-2, 62 So.3d at 723-724 (emphasis added).
Likewise, in analyzing the plaintiffs’ suspension argument, the Supreme Court observed:
In analyzing whether the Plaintiffs in this case timely filed their claims, we must consider the two class actions, Buxton and Chalona, which were timely filed on August 25, 2006, and whether the Plaintiffs are putative members of either class.
Taranto, 10-0105, p. 14, 62 So.3d at 731 (emphasis added).
Fourth, and with respectful deference, our analysis of La. C.C.P. art. 596 reveals that the Supreme Court’s opinion does not take into account subsection B’s provisions regarding the calculation of time and appeal delays. “The time periods in Subpar-agraphs (A)(2) and (3) of this Article commence upon the expiration of the delay for taking an appeal if there is no appeal, or when an appeal becomes final and definitive.” La. C.C.P. art. 596 B. “The notice required by Subparagraphs (A)(2) and (3) of this Article shall contain a statement of the delay periods provided herein.”[16] Id.
Subsection B was added to La. C.C.P. art. 596 by Acts 2010, No. 185, § 1. The official comments, which were also enacted in the foregoing Act, indicate clearly that subsection B is to be viewed as an interpretive amendment meant to |3ficlarify an uncertain area of the law.[17] “When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retroactive effect because it does not change, but merely clarifies, pre-existing law.” St. *480 Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992).
Thus, and purely by way of illustration, La. C.C.P. art. 596 B indicates that a plaintiff who successfully establishes that he was a putative member of the Chalona class had until November 30, 2009, to file a claim against Citizens.[18] Specifically, the record before us indicates that the class restriction in Chalona was published on April 24, 2008. Citizens sought appellate review of the district court’s class restriction pursuant to La. C.C.P. art. 596 A(3)(b). This Court issued |S7its opinion in Chalona on June 11, 2008. Chalona, supra. Citizens filed an application for a writ of certiorari with the Louisiana Supreme Court on July 11, 2008, but withdrew its writ application on October 17, 2008, at which time the Chalona class restriction became final and definitive. According to La. C.C.P. art. 596, the suspended period terminated on November 16, 2008, and prescription commenced to run again. The Chalona petition was filed on August 25, 2006, one year and seven days before the September 1, 2007, the prescriptive date established by La. R.S. 22:1894. As noted, September 1, 2007, through September 3, 2007, were legal holidays. Thus, the one year, seven-day period is, in reality, a one year ten-day period. Accordingly, the full text of La. C.C.P. art. 596 indicates that a plaintiff who successfully establishes that he was a putative member of the Buxton/Chalona classes had until November 30, 2009, to file a claim against Citizens.[19]
Clearly, the Supreme Court’s Taranto opinion is limited to the facts found in the case and does not stand for the proposition that May 31, 2009, is a definitive prescription date for all Katrina-related claims.
VI
We now discuss the Supreme Court’s Duckworth opinion, which holds that the filing of an independent, individual lawsuit prior to a ruling on class certification, does not result in a putative class member’s forfeiture of Article 596 suspension of prescription.
[saThe Duckworth opinion addresses two consolidated cases, both of which concern lawsuits filed by insureds against their property insurers for damage to their respective homes as a result of Hurricane Katrina that were subsequently dismissed on prescription grounds. In the Duck-worth action, Ms. Duckworth first brought her claim in 2007 as part of a mass joinder complaint filed in federal district court entitled Acevedo v. AAA Insurance. That action was subsequently dismissed because it was not filed in a court of competent jurisdiction. Ms. Duckworth then filed her claim in the 34th Judicial District Court in December 2008. Subsequently, her insurer — Farm Bureau — filed an exception of prescription. In response, Ms. Duckworth argued that her allegations of underpayment of damages and for bad faith penalties were also claims alleged in Acevedo and Vinturella v. Louisiana Farm Bureau Insurance Company, Orleans Parish Civil District Court, No. 2006-8340. Thus, Ms. Duckworth argued that her claims were suspended pursuant to La. C.C.P. art. 596. The district court, nevertheless, granted the exception and dismissed Ms. Duck-worth’s lawsuit. Ms. Duckworth appealed the ruling to this Court.
*481 In the consolidated case, Mr. Smith filed his claim against Farm Bureau in December 2008 in Orleans Parish Civil District Court alleging underpayment of damages and seeking bad faith penalties. Farm Bureau subsequently filed an exception of prescription seeking the dismissal of Mr. Smith’s lawsuit. Mr. Smith alleged that prescription on his claims was suspended because he was a putative or purported class member of several Louisiana and federal class-action lawsuits, |S9namely Acevedo, Vinturella and the Road Home classes. The district court granted Farm Bureau’s exception, and Mr. Smith sought appellate review with this Court.
On review, this Court observed that the Acevedo lawsuit could not suspend prescription on the consolidated claims because it was conceded that Acevedo was dismissed because it was not filed in a court of competent jurisdiction.[20] With respect to the Vinturella and Road Home classes, both of which were filed on August 24, 2006, the Duckworth panel held that “a plaintiff forfeits his entitlement to rely on the suspension provisions of La. C.C.P. art. 596 when he files an individual lawsuit prior to the certification of the class in the lawsuit upon which he relies to suspend prescription.” Duckworth, 11-0837, p. 4, 78 So.3d at 837. Duckworth grounded its reasoning upon Dixey v. Allstate Ins. Co., unpub., 09-4443 (E.D.La.9/21/11), 2011 WL 4403988, the Fifth Circuit Court of Appeal’s opinion in Lester v. Exxon Mobile Corp., 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La.12/17/10), 51 So.3d 14, and Judge Murray’s concurrence in Katz v. Allstate Ins. Co., 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, wherein she wrote:
[[t]he mover] cites federal district court cases from various jurisdictions which, hold that a plaintiff who files an independent action before a determination on class certification has been made cannot benefit from the tolling of prescription applicable to putative class members under federal law. The underlying rationale for this rule, which is that the plaintiff has effectively “opted out” of the class action by filing his own suit, seems to apply to the instant situation as well.
Duckworth, 11-0837, pp. 4-5, 78 So.3d at 837 (emphasis in original of Katz ).[21]
*482 Accordingly, this Court held that the district court correctly granted Farm Bureau’s exceptions and affirmed the dismissals of the two consolidated cases.[22] Subsequently, the Supreme Court granted certiorari to review this Court’s ruling. Duckworth, 11-2835 (La.3/30/12), 85 So.3d 99. The Supreme Court phrased the question at hand accordingly: “Does a plaintiff who is a putative class member, but who elects to file a separate suit prior to a resolution of the class certification issue, effectively ‘opt out’ of the class action and forfeit the benefit of the suspension of prescription resulting from the filing of the class action?” Duckworth, 11-2835, p. 7, - So.3d at -, 2012 WL 5374248, at *3.
Answering in the negative, the Supreme Court concluded that a plaintiff who files a separate suit prior to the resolution of the class certification issue does not forfeit the benefit of Article 596 suspension of prescription. The Supreme Court grounded its conclusion on a plain reading of the language contained in Article [41596. Specifically, the Supreme Court first observed that the class action procedure is “a unique joinder device imported into Louisiana procedure with the adoption of the Code of Civil Procedure in 1960,” which underwent a comprehensive revision in 1997. Duckworth, 11-2835, p. 13, — So.3d at -, 2012 WL 5374248, at *7. Article 596’s suspension of prescription provisions were ushered into the Code of Civil Procedure as a part of the 1997 revision. After analyzing the language of the provision itself, the Supreme Court observed that suspension continues until thirty days after one of several events occurs: 1) a claimant elects to be excluded from a class by virtue of submitting an opt-out form; 2) a claimant is judicially excluded by virtue of class redefinition or restriction; 3) the class action demand is judicially dismissed or stricken; or 4) class certification is judicially refused or revoked. The Supreme Court then concluded that the foregoing events are the “exclusive statutory triggers for recommencing the accrual of li-berative prescription on the claims of those persons described or defined in the class action petition.” Duckworth, 11-2835, p. 15, — So.3d at -, 2012 WL 5374248, at *8.
Additionally, the Supreme Court concluded that a jurisprudentially created trigger — the filing of an individual lawsuit prior to a ruling on class certification — is unwarranted for several reasons. First, the Supreme Court observed that the jurisprudential trigger violates “the basic rule that prescription statutes are to be strictly construed against prescription and in favor of the claim sought to be extinguished.” Duckworth, 11-2835, p. 15, — So.3d at -, 2012 WL 5374248, at *8. Second, the jurisprudential trigger violates the express language of Article |4¾596: “Consistent with the plain wording of this provision, the only requirement for obtaining the benefit of the article’s suspension of prescription is that one fall within the definition or description of a putative class member.” Id. Third, the Supreme Court noted that Article 596 clearly provides that “prescription, once suspended, does not recommence until the propriety of the class action or the member’s participation in the action is judicially determined ... and until requisite notice is issued.” Duckworth, 11-2835, p. 16, - So.3d at -, 2012 WL *483 5874248, at *9. The Supreme Court further reflected on the importance of notice to both Article 596 and Louisiana’s class action procedure:
Under the 1997 revisions, four types of class actions are potentially available in Louisiana. See La. C.C.P. art. 591(B)(1 — 4). The law does not provide any mechanism for members of one of the first two types of class actions to “opt out.” La. C.C.P. art. 591(B)(1) or (2). A judgment in either will bind all members of the class. Maraist, 1 Louisiana Civil Law Treatise: Civil Procedure, § 4.12 at 102-103. A judgment in the third type, an Article 1(B)(3) class, binds all members who do not request exclusion. La. C.C.P. art. 592(B)(2)(c). In the Article 591(B)(3) class, this exclusion is achieved after notice, which must be given “as soon as practicable after certification, but in any event early enough that a delay provided for the class members to exercise an option to be excluded from the class will have expired before commencement of the trial on the merits of the common issues.” La. C.C.P. art. 592(B)(1). And, exclusion is effected by submitting an election form. See La. C.C.P. art. 592(B)(2)(b).
Thus, with the 1997 revisions to the Code of Civil Procedure articles on class actions, the legislature enacted a comprehensive scheme providing for notice of the pendency of class actions and the opportunity to exercise an option to be excluded from the class. Unlike its federal counterpart, Fed. Rule Civ. Proc. 23, in which there is no set procedure or form for requesting exclusion, Louisiana has chosen to tie exclusion from a class (and the recommencing of prescription under Article 596(A)(1)) to the submission of an election form. Had the legislature intended for the filing of an individual lawsuit to constitute one of the methods for “opting out of’ or electing exclusion from a class, the legislature could have added appropriate |4SIanguage to that effect to the relevant articles. It did not; thus, the filing of an individual lawsuit is not, pursuant to the Code of Civil Procedure articles, a means of requesting exclusion from a class and/or of recommencing the prescriptive clock. The lower courts’ conclusion in this case — that the filing of an individual lawsuit by a member of a putative class prior to a ruling on the class certification issue operates as an “opt out” of the class action and a forfeiture of the suspension provisions of La. C.C.P. art. 596 — is, thus, inconsistent with the letter of the law.
Duckworth, 11-2835, pp. 17-19, — So.3d at -, 2012 WL 5374248, at *10.
Accordingly, the Supreme Court overruled this Court’s Duckworth opinion, and repudiated Lester: “To the extent the Lester decision (on which the courts below relied) holds that the filing of an individual lawsuit by a member of a putative class prior to a ruling on the class certification issue operates as an ‘opt out’ of the class action and a forfeiture of the suspension provisions of La. C.C.P. art. 596, it is hereby overruled.” Duckworth, 11-2835, p. 26, — So.3d at -, 2012 WL 5374248, at *14. Turning back to the individual Duckworth and Smith claims, the Supreme Court reviewed the pleadings and concluded that both sets of plaintiffs were entitled to the benefits of Article 596 suspension of prescription because each had established that they are putative members of the Vinturella class as defined.
Thus, as summarized in Quinn, to receive the benefit of Article 596 suspension of prescription, a claimant filing an individual suit must establish the following predicate facts: “(1) the existence of a timely filed class action proceeding against the *484 defendant, (2) that he or she is a member of the class described or defined in the identified class petition, and (3) that the claims asserted l,l4in the independent action arise ‘out of the transactions or occurrences described’ in that petition.” 12-0152, p. 5, — So.3d at -, 2012 WL 5374255, at *8.
CONCLUSION AND REMAND INSTRUCTIONS
We vacate the judgments below and remand these matters to the district court and respective trial judges for further proceedings, including evidentiary hearings on the exceptions of prescription.
To expedite the consideration of the issues presented by the exceptions of prescription, we require that the plaintiffs file their final amended petitions, pursuant to La. C.C.P. art. 934, within thirty days of the finality of this judgment. Citizens may amend its exceptions, if necessary, and re-urge its exceptions after the amendment is filed.
At the evidentiary hearing, the parties may present evidence as they deem necessary or helpful and not limited to but definitely including (1) the filing date of any Louisiana class-action lawsuit upon which a plaintiff relies for the tolling of the prescriptive period; (2) whether the class-action was filed in a court of competent jurisdiction and proper venue, and, if not, the date on which Citizens was served by process with the class-action lawsuit; and (3) facts which affirmatively establish that the plaintiffs claim now asserted arises out of the transactions or occurrences described in the class-action lawsuit such that the plaintiff was a putative member of the proposed class as described.
From the evidence introduced at the hearing, the trial judge shall then determine the filing date of such class-action lawsuit and the court in which it was 14fifiled as well as whether it was a court of competent jurisdiction and venue (or if not, whether Citizens was served with process) on or before September 4, 2007. If such class-action was not filed by that date or, if not filed in such a court, or, if Citizens was not served with process by that date, it cannot toll the prescriptive period.
If the class-action lawsuit was timely filed (or timely served), the district court shall then determine whether the claim asserted in the plaintiffs current lawsuit (the petition as amended and supplemented) arises out of the transactions or occurrences described in the relied upon class-action lawsuit such that the plaintiff is defined or described as a member of the class. If the claim now asserted does not arise out of the transactions or occurrences described in the relied upon class-action lawsuit such that the plaintiff is not defined or described as a member of the class, then such class-action cannot toll the prescriptive period.
If the plaintiffs claims in his petition are determined by the district court to include the plaintiff as defined or described in the class-action lawsuit, then the district court shall determine whether the prescriptive period has been tolled by suspension. In no event shall the district court determine that the prescriptive period has not been tolled on account of the filing of the plaintiffs individual lawsuit as if such alone sufficed for an opt out of the class-action lawsuit, depriving the plaintiff of the benefits of prescriptive tolling.
If such class-action lawsuit was pending in a Louisiana court, the district court shall apply the exclusive provisions of La. C.C.P. art. 596, giving special Inattention to the requirements and delays described in Article 596 B. The district court shall then determine the number of days from the date of the filing of the class-action *485 lawsuit until September 4, 2007. Upon the application of Article 596’s requirements, the district court shall then add that number of days to the appropriate date on which prescription under Article 596 began to run again to calculate the last day of the prescriptive period which had been suspended. If plaintiffs individual lawsuit was filed by that date, the district court shall overrule the exception of prescription.
If the district court finds that no Louisiana class-action lawsuit suspended the prescriptive period, the district court shall sustain the exception and dismiss plaintiffs claim with prejudice. In such event the district court shall not permit further amendment of the petition under Article 934.
Of course, nothing in our remand instructions precludes any party from seeking further appellate or supervisory relief, as the case may be, from any final or interlocutory judgment which may be rendered on remand.
DECREE
The district court judgments sustaining the exceptions of prescription filed by Louisiana Citizens Property Insurance Corporation and dismissing the plaintiffs’ lawsuits are vacated. The cases are remanded to the district court and to their respective divisions of the court.
VACATED AND REMANDED

. Orleans, Plaquemines, and St. Bernard Parishes.

. We have — pending today's decision — stayed proceedings, or suspended the briefing schedules, in the following pending appeals and writ applications: James Alphonse v. Louisiana Citizens Property Insurance Corp., Docket No. 11-1787, 34th Judicial District Court, Docket No. 114-569; Randall Wire v. Louisiana Citizens Fair Plan, Docket No. 11-1814, 34th Judicial District Court, Docket No. 114— 063; Mathilda Edison v. Louisiana Citizens Fair Plan, Docket No. 11-1823, Orleans Parish Civil District Court, Docket No. 2010-01483; Gail Thomas v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0001, Orleans Parish Civil District Court, Docket No. 2010-04408; Ingrid Theodore v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0002, Orleans Parish Civil District Court, Docket No. 2010-4425; Scott Young v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0005, Orleans Parish Civil District Court, Docket No. 2010-4404; Courtney Nero v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0019, Orleans Parish Civil District Court, Docket No. 2010-4407; Sharon Bruno v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0241, 34th Judicial District Court, Docket No. 114-440; Paula & Michael St. Angelo v. Louisiana Citizens Property Insur- *463 anee Corp., Docket No. 12-0690, 34th Judicial District Court, Docket No. 118-157; Holmont & Jacqueline Smiles v. Louisiana Citizens Property Insurance Corp., Docket No. 12-0817, 34th Judicial District Court, Docket No. 118-158. Leslie Frances v. Louisiana Citizens Insurance Company, Docket No. 12-CA-0961, Orleans Parish Civil District Court, Docket No. 2010-01493; Gillion Haymond v. Louisiana Citizens Fair Plan, Docket No. 12-CA-1207, Orleans Parish Civil District Court, Docket No. 2011-08094.

. The parties were required to brief before our court whether on en banc hearing we ourselves should overrule the panel decision in Duckworth. See, e.g., Fulmer v. State Department of Wildlife and Fisheries, 10-0088 (La.App. 4 Cir. 10/6/10), 50 So.3d 843 (wherein the court en banc overruled the panel decision in Kuebel v. Dept. of Wildlife & Fisheries, 08-1018 (La.App. 4 Cir. 4/15/09), 14 So.3d 20), aff'd, 10-2779 (La.7/1/11), 68 So.3d 499. The panel decision in Duckworth had followed an earlier analysis in a concurring opinion by a judge of another panel in Katz v. Allstate Ins. Co., 04-1133, p. 7 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, 447-448 (Murray, J., concurring) ("the plaintiff has effectively ‘opted out' of the class action by filing his own suit.”), which had been followed by the holding of Lester v. Exxon Mobil Corp., 09-1105, p. 9 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, 1076 ("the plaintiffs, by filing the Warren Lester case prior to a ruling on class certification, in the In Re Harvey Term Litigation opted out of the class action suit, and therefore the pen-dency of that suit did not serve to suspend prescription”). We observe that the holding of the Katz majority opinion that "the filing of the class action did not alter the contractual prescriptive period” is implicitly overruled by Taranto, infra.

. By furnishing specific dates throughout this opinion, we do not imply that the district court is thereby precluded from determining a different date based upon the evidence before it.

. The opt out forms have not been made a part of the present record.

. Ms. Ansardi’s individual petition omits the language from the mass joinder petition concerning Orrill and her alleged opt out.

.The district court did not specify whether the dismissal was with or without prejudice. See La. C.C.P. art. 1844 ("A judgment of dismissal with or without prejudice shall be rendered and the effects thereof shall be regulated in accordance with the provisions of Articles 1671 through 1673”).

. The district court granted, on October 5, 2011, Citizens’ exception of res judicata with respect to Nichelle Johnson's claims against Citizens. Nichelle Johnson has not appealed the October 5, 2011 ruling. The district court did not address Citizens' exception of improper cumulation of actions given that it granted Citizens’ exception of prescription.

. By discussing the specifics of putative, purported and/or certified classes, we do not imply that the district court is thereby precluded from determining a different class based upon the evidence before it. See also n. 5, ante.

. That the Quinn rule regarding any class-action suit pending in federal court extends to a class-action commenced in a Louisiana court but then removed is evident from the basis of the Supreme Court’s opinion.

. Prescription may also be renounced after it has accrued. See La. Civil Code art. 3449. The issues before us do not implicate the concept of renunciation.

. We do not read the Supreme Court’s use of the term "suspends” to necessarily equate with our civilian terminology regarding suspension of prescription.

. The Supreme Court in Taranto specified September 1, 2007, as the last date upon which Katrina-related claims must be filed in order to be considered timely. We note, again, that September 1, 2007, was a Saturday, and that September 3, 2007, was Labor Day, an official holiday. See n. 5 and n. 10, ante.

. See La. R.S. 1:55; and La. C.E. art. 201. See also La. Civil Code arts. 3454 and 3457.

. We presume that Taranto did not address La. C.C.P. art. 596 B because its analysis of the facts pursuant to La. C.C.P. art. 596 A indicated clearly that the petition therein had been timely filed.

. The official comment provides:
(a) Article 596 was amended by the addition of Paragraph B to clarify that the commencement of the thirty day periods provided in Subparagraphs (A)(2) and (3) are suspended by the delays applicable to an appeal from the judgment ruling on class certification.
(b) Read literally the prior version of Article 596 gave putative class members receiving notice of the court’s denial of certification of their membership in a class action a thirty-day period, commencing upon notice of the judgment, during which prescription applicable to filing individual suits continued to be suspended.
(c) The provision created confusion because Article 592(A)(3)(h) [592 A(3)(b) ] authorizes an appeal from a judgment denying certification and Article 596 does not provide that its thirty-day suspensive periods are subject to further suspension by the articles on appeal. Given this uncertainty, a cautious plaintiff’s attorney receiving notice of an adverse ruling on class certification might needlessly file an individual suit for his client during the period for taking or completing an appeal to avoid a possible prescription exception.
(d) The amendment adding Paragraph (B) to Article 596 clarifies that its thirty-day suspensive periods do not run during the delays applicable to taking or completing an appeal. It also requires the district court to include in the notice specified in Subparagraphs (A)(2) and (3) a statement of the delay periods provided in this Article.

. See n. 5, ante.

. We note that November 26, 2009, which was Thanksgiving Day, through November 29, 2009, were legal holidays. See La. R.S. 1:55 E.

. We are unable to ascertain from the reported decisions whether the defendant had been served with process within the prescriptive period and before the dismissal.

. A quick review of Dixey, however, shows that that court relied on Katz and Lester in holding that a plaintiff forfeited the benefit of suspension of prescription under La. C.C.P. art. 596 by filing an individual suit prior to class certification. No other reasoning was provided. As shown in the quote above, Katz also provided no specific authority other than "various federal district court cases from various jurisdictions.” Katz, 04-1133, p. 1, 917 So.2d at 447 (Murray, J., concurring). In Lester v. Exxon Mobil Corp., 09-1105, pp. 7-9 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, 1075-1076, the Louisiana Fifth Circuit adopted the rationale of three decisions arising out of two U.S. District Courts of New York, which held that allowing putative class members to file individual suits prior to class certification would undermine the principal purpose of class-actions — to promote judicial economy by allowing putative class members to wait and join a class-action, rather than having to file individual suits to secure their rights. See Fezzani v. Bear, Steams & Co., Inc., 384 F.Supp.2d 618 (S.D.N.Y.2004); Puttick v. American Online, Inc., unpub. (S.D.N.Y.5/23/07), 2007 WL 1522612; and Calvello v. Electronic Data Systems, unpub. (W.D.N.Y.4/15/04), 2004 WL 941809. Although these cases were not explicitly reversed, their pertinent conclusions were subsequently rejected by their presiding circuit court in In re WorldCom Securities Litigation, 496 F.3d 245, 255 (C.A.2 2007). It is noteworthy, therefore, that the Lester ruling was supported by three district court cases, two of which remain unpublished, whose rationale *482 the federal Second Circuit subsequently rejected.

. We further observe that the holding of the Katz majority opinion that "the filing of the class action did not alter the contractual prescriptive period” is implicitly overruled by Tar-anto, supra.